## GAYLE et. al. v. SINGLETON.

1. The power given to County Courts over estates of deceased persons, does not entirely divest chancery of jurisdiction; particularly where a matter peculiar to chancery is involved, in which case it takes jurisdiction of the whole subject.
2. A bill should not be dismissed for improper parties, or for want of parties. Such defect is amendable at any time.
3. A mortgagee of slaves files a bill to forclose against an estate reported insolvent; his preference being lost by a delay of thirteen years, chancery will call in all the creditors and make distribution.
4. Where property is sold by an administratrix, subject to a mortgage, and bought by herself at an inadequate price, which mortgage is afterwards determined to have lost its lien, the sale will be set aside.
5. Commissioners may be appointed to audit claims of creditors, and to state an account with the administrator; but sufficient notice to creditors must be given.
6. A decree ordering the sale of property in the hands of heirs, must specify and identify it.

JUDGE TAYLOR delivered the opinion of the Court.

The defendant in error, filed his bill against the plaintiffs in the Circuit Court of Monroe county, charging, that in the year 1811 he lent to Matthew Gayle, who, as well as the defendant, resided in South Carolina, eleven hundred dollars ; and to secure the payment thereof, took his bond, and a mortgage of fifteen negroes. The bond and mortgage were executed the 25th June, 1811, and the money intended to be secured thereby, was payable on the 1st day of the August next thereafter ; that some time after, Matthew Gayle moved to the Alabama river, and within the then Mississippi Territory, carrying with him the negroes which he had mortgaged, the debt being still unpaid; that defendant frequently received letters from said Gayle after his removal, promising to pay the debt ; that in the year 1820, said Matthew Gayle died intestate, leaving Mary Gayle, his widow, and Billups Gayle, John Gayle, jr. Levin Gayle, Lucinda Eastin, wife of Thomas Eastin, Maria Gayle. now Maria Woodson, a widow, and Matilda, wife of William F. Ware, his children ; that Matilda Ware died before the bill was filed, leaving one child, Edward Ware ; and that in Octo-

ber, 1823, Billups Gayle departed this life, leaving five children, viz: Eliza Gayle, Scarboro Gayle, Billups Gayle, Jane Gayle, since dead, and Rees Gayle; that when Matthew Gayle died, he was possessed of the negroes mortgaged to the defendant, their increase, and some others, subsequently acquired; that after the death of the said Matthew, administration of his goods, &c. was committed to Mary Gayle, his widow, and John Gayle, jr. one of his sons; and that said John Gayle, jr. took upon himself the principal management of the estate; that at a sale of the personal estate of said Matthew Gayle, at which the said fifteen negroes and their increase were sold, the said Mary Gayle and John Gayle expressly stated, proclaimed, and published to all persons attending the sale, that said negroes were sold subject to said mortgage; that the persons who attended the sale with the view of purchasing, were by this circumstance induced to decline doing so; and that the administratrix, Mary Gayle, became the purchaser of all said negroes, at less than one fourth of what they would have brought if unincumbered: that the said Mary Gayle afterwards died, having made her will, by which she disposed of the negroes purchased as aforesaid among her children; that the will was made at the solicitation of the children of said Mary, as he, the defendant in error, believes, and under the assurance that her children, to whom she bequeathed the said negroes, would discharge the debt due to said defendant; that the said John Gayle, jr. administrator as aforesaid, soon after the death of said Mary, declared upon oath, in the office of the clerk of the County Court of Monroe county, that the estate of the said Matthew Gayle was insolvent, the legatees of the said Mary Gayle having, in the mean time, got possession of the negroes bequeathed to them as aforesaid; that the said John Gayle, jr. Levin Gayle, Maria Woodson, Thomas Eastin and wife, and the representatives of Billups Gayle, were, when said bill was filed, in possession of the said negroes; that no inventory or account of the sale of the estate of Matthew Gayle, deceased, has been returned by the administrator to the Court which granted the letters of administration, and that the only security to the administration bond has since died insolvent.

The prayer of the bill is, that the administrator may be decreed to pay the debt due to him out of any money belonging to him as administrator; or that such of the de-

fendants as are in possession of the said fifteen negroes, and their increase, or any of them, may be decreed to deliver them up; that so many of them may be sold as may be necessary to satisfy the said mortgage; or that the mortgaged negroes may be decreed to be delivered up to the defendant in error in satisfaction of his mortgage.

There is also a prayer, that the surviving administrator may account, by shewing the manner he has administered the estate, producing an inventory of the goods, &c which have come to his hands to be administered, and the value thereof, a list of debts due to and from the said Matthew Gayle at the time of his death, exhibiting the balance for and against the estate. There is also a prayer for general relief.

The defendants to the bill are John Gayle, jr. the administrator, Levin Gayle, Maria Woodson, Thomas Eastin, Edward Ware, an infant son of Matilda Ware, deceased, formerly Matilda Gayle; Harriet Gayle, Eliza Gayle, Scarboro Gayle, Billups Gayle, and Rees Gayle, infant children of Billups Gayle. deceased.

The bill was filed the 10th July, 1824. At the October term, 1826, it was amended, by making Edgar R. James, who married Maria Woodson, after the bill was filed, a defendant.

Samuel M'Coll was by the Circuit Court appointed guardian *ad litem* of the infant defendant Edward Ware, and answered in the usual way.

John Darrington was appointed guardian *ad litem* to the four infant children of Billups Gayle, and answers at length, admitting every thing charged in the bill, and shewing that he is the agent for the defendant in error.

It no where appears who Harriet Gayle is, or how she came to be made a defendant. It seems, however, that she is an infant, as Z. Merriwether is appointed her guardian *ad litem*.

Judgements *pro confesso* are rendered against Levin Gayle, Thomas Eastin and wife, and the guardian of Harriet Gayle. James and wife answer, declaring ignorance as to all the charges in the bill, and praying proof, &c.

The answer of John Gayle, jr. the administrator, admits the debt to be due, and the execution of the bond and mortgage as stated in the bill, except the consideration, which is stated in the answer to have been the transfer by the defendant in error to Matthew Gayle, the de-

cedant, of a demand on one Thomas Livingston, for the amount specified in the bond. This respondent further avers in his answer, that the negroes specified in the mortgage were on the Alabama river as early as 1810, and sometime before the execution of the bond and mortgage; and that this was known to the mortgagee at the time the debt was contracted. He admits that he often heard the decedant M. Gayle, in his lifetime, say that he owed the debt, and express a wish to pay it. He states that at the time of the sale of the negroes by the administrator, he informed the company who were in attendance at the sale, that the said negroes had been mortgaged to the defendant in error, but that the estate would be fully able to pay the debt for which they had been mortgaged; that he was induced to do this by a knowledge that, through the agent of the defendant in error, it was a matter of notariety that this mortgage existed, and a belief that all those present were apprised of it. For the purpose of obviating the effect which this might have, he made this statement; and he did believe at the time, that the estate would be sufficient to pay the demand. He admits that Mrs Mary Gayle became the purchaser of all the negroes, and appends to the answer an account of the sale, by which it appeared that eighteen negroes were sold for the sum of twenty-three hundred and ten dollars. This purchase was made by the said Mary Gayle, subject to whatever effect the mortgage might have. It is also admitted in the answer, that Mary Gayle disposed of the said negroes by her will; but it is denied that she was induced to make this will by her children, or any one; or that as far as he knows, any assurance was given to her by any of her children, that the debt of the defendant in error should be paid; but alleges that the reason assigned by her for making a will, was her wish to give to Edward Ware more than the law would entitle him to receive as a distributive share; and to secure to her daughter, Maria Woodson, her portion, so as to prevent her husband from wasting it. The answer also states that the children of Mary Gayle are in possession of the estate which she left, the father of Edward Ware, and Maria Woodson (now Maria James) holding the principal part; that this respondent is ignorant what has been the increase of the said negroes purchased by Mary Gayle as aforesaid; admits that respondent has two of the negroes in his pos-

72

session, viz, Tom and Bob, which he purchased of Levin Gayle, who bought them of Mary Gayle; and that another, viz, July, whom he considers as belonging to the estate of Mary Gayle, deceased, and to whom he has no claim, is also in his possession; that the estate of Mary Gayle remains unadministered, by reason of the executors appointed to execute the will, having refused to do so; that this respondent took upon himself the entire management of the estate of Matthew Gayle, deceased, and Mary Gayle did not meddle at all with it; that Mary Gayle did not pay over the purchase money of said negroes, nor has she since paid it; she gave her notes, which were in respondent's hands. The answer further states, that nothing was due to the estate of Matthew Gayle when he died, except a debt from William F. Ware, who was totally insolvent; and possibly a small amount from the administrator of Billups Gayle, deceased, though this is not ascertained, as no settlement has been made with him; that the perishable property of Matthew Gayle, deceased, sold for $392 75, which was also bought by Mary Gayle, as is shewn by the exhibit, A, which accompanies the answer; and that he held, at the time of his death, a tract of about five hundred acres of land, purchased by him of the Government, on which he had paid one fourth of the purchase money, and for which he obtained certificates from the the land office; that the crop of the year in which said Matthew Gayle, died, was made jointly with said Levin Gayle, to whose answer reference is made on this subject. The answer further states, that Billups Gayle was one of the securities in the administration bond, whose estate is wealthy.

Exhibit C. which accompanies the answer, contains an account of the debts which it is alleged had been presented to the administrator for payment, and which had not been paid, amounting to $10,804 72½; and exhibit D. is an account of the moneys which the said administrator alleges he had paid away, amounting to $2,297 55½.

At the March term, 1827, of the Circuit Court, an interlocutory decree was made, by which, on account of its having been considered by the chancellor that the mortgage of the defendant in error had lost its lien as between him and the other creditors of the estate of Matthew Gayle, deceased, on account of the length of time during which the negroes covered by it had been left in the

possession of the said M. Gayle, deceased, it was ordered that commissioners be appointed " to examine and audit the claims against the estate of the said M. Gayle, deceased, and that they report on the same to the next term of this (the Circuit) Court ; and it was further ordered that the said commissioners give notice in the newspaper printed in Claiborne, requiring all persons having claims against said estate, to present the same within three months to the said commissioners, in order that the creditors of said estate may receive their equal dividend with the complainant."

On the 20th October, 1827, the commissioners reported that several persons, viz : David Richardson, John Howard, Smoot and Darling, Felder and M'Neal, had exhibited satisfactory evidence of debts due to them, amounting in the whole to $3,472 50, including interest up to the 8th of that month, which were added to the demand of the defendant in error, amounting, including interest up to the 8th March, 1828, to $2,376 51, made $5,849 51.

There is also in the record, a statement of one Thomas English, received as evidence by consent of the counsel on both sides, which proves the circumstances of the administrator's sale, as they are admitted in the answer, except in this, that it states the grown negroes generally to have been bid off, agreeably to his recollection, at an average price of about fifty dollars.

At the February term, 1828, a final decree was rendered. Preceding this decree, and as the ground of it, many facts are stated to be admitted in the answer of the administrator, and to be sustained by other parts of the record, which I do not consider to be thus admitted or sustained. By the decree, the defendant in error, and each of the creditors, in whose favor the commissioners reported, have the amount of their debts, including interest and the costs, adjudged in their favor against the plaintiffs in error, collectively, "to be levied of the personal estate of the said Matthew Gayle, deceased, in the hands of his said administrator and heirs;" and executions were ordered to issue for the collection of those several sums. It was further decreed, that if the sale of the personal estate did not produce a sufficient sum to pay and satisfy those debts, then upon the return of the executions by the sheriffs, the commissioners appointed by the interlocutory decree, were required to proceed to

sell the real estate of said Matthew Gayle, deceased, or so much thereof as would, when added to the proceeds of the personal estate, satisfy said debts ; and in the event of a deficiency in the proceeds of both the personal and real estate to pay the whole of said debts, &c. then the sums raised by the sales, were decreed to be apportioned among said creditors in proportion to the amount of their several claims.

Several errors are assigned, the first of which is as follows: " The Court below erred in not dismissing the complainant's bill when submitted on the bill, answers, and exhibits, for a hearing."

To support this assignment, two positions are taken: 1st. That the Court of Chancery has no jurisdiction of the cause; the County Court being adequate to afford ample redress ; and, 2nd. That other parties should have been made defendants to the suit, to wit : the personal representatives of Billups Gayle, and Mary Gayle, deceased.

Except the features of a case be in some respects peculiar, this Court would be inclined to confine heirs, distributees and creditors of decedents' estates, to the County Court, as it is believed, that in the general, that tribunal affords a cheap and speedy remedy to such persons. But certainly many cases may arise in which that Court could not afford a sufficient remedy, and in such cases, a resort to Chancery becomes necessary. Although we are not willing to say that the two jurisdictions are concurrent, yet we feel no difficulty in determining that the powers which have been vested in the County Court in these cases, has not entirely divested Chancery of its jurisdiction. But in the present case, the defendant in error filed his bill to foreclose the mortgage ; this object could alone be effected by a Court of Chancery. It is true, it was decided, and the decision was a correct one, that by his negligence he had given other creditors an equal claim upon the property, covered by the mortgage, with himself ; yet this mortgage was good against those claiming as distributees of the mortgagor, and the defendant had a right to believe that he would obtain the relief which he sought in Chancery. It was by the proof of facts with which he cannot be presumed to have been apprized, that he failed in his object. As, however, that Court was compelled to deny the defendant this relief, from circumstances which he cannot be presumed to have been apprized of,

and as *prima facie*, his case afforded one for a decree in his favor, it is believed that jurisdiction of the whole matter was drawn into that Court, and it was authorized to render a decree for the debt, or such part of it as the defendant was entitled to recover.

On the other ground, it is believed the Court would not have been authorized to dismiss the bill. In no case can this be done, either because there are too many or not enough of parties to the suit. If too many, it will of course be dismissed as to those who should not have been included; if too few, this is matter of amendment at any stage of the proceedings. The first assignment of error, therefore, is not sustained.

The second and third assignments are, "that the Court below erred in rendering the interlocutory and final decrees."

After the Court of Chancery properly obtained jurisdiction of the case for any purpose, it was certainly right that it should retain it until a final decree with regard to the whole interest of the parties in the subject matter of dispute. The insolvency of the estate of Mathew Gayle, deceased, was opposed to the recovery of the whole of the defendant's debt. Whether that insolvency was sufficiently proved, I will not now stop to inquire. By our law, no distinction in the grade of debts is known; every creditor, whether by bond, or account, comes in for an equal distribution, in proportion to the amount of his claim. Chancery never favored the common law distinction with regard to the grade of debts. So soon, therefore, as the insolvency of the estate of M. Gayle, deceased, was proved, it became necessary to call in the other creditors to ascertain what amount the defendant was entitled to recover; and this being done, a final decree as to the rights of all should have been rendered. But it is believed that the proper steps were not taken in the Court below to effect this object. The appointment of commissioners, by the interlocutory decree, to receive evidence of the claims which should be exhibited by the creditors of the decedant, was correct: but the notice which these commissioners were required to give was insufficient. I would not be understood to say, that the mode and time prescribed for commissioners appointed on a report of insolvency to a County Court, must be followed strictly by a Court of Chancery in similar cases, yet it would

probably be as well, generally, to conform to the statute in these respects as near as the circumstances of the case will admit of. But in the present case, it was required that "notice should be given in a newspaper printed in Claiborne, requiring all persons having claims against said estate, to present them within three months." The number of times this notice is to be published, is not specified. Once would fully comply with the requisition of the decree. In this, we think there is error. The notice is not required to be such as would afford to creditors generally an opportunity to be informed of it. The decree leaves too much in the power of the commissioners. But in the final decree, still more fatal errors are committed. It is rendered against the defendants generally, without specifying the property in the hands of each ; and it requires sheriffs, by virtue of executions, to levy on and sell particular property, without affording them the means of identifying that property. The sheriff is an officer never used by Chancery, to carry such decrees as the present, into execution. Where a sum of money is to be collected out of the general property of an individual, he is well calculated to perform the duty ; but where particular property is subjected to the decree, it is not practicable for him to have any legal method of identifying the property. A party may, if he choose, point out such property, yet he may not, and the decrees of the Court are not to depend upon such contingencies. The Court below might have appointed such person as it thought proper, as a commissioner to execute the decree, but there should have been evidence before the Court of the persons who held the property, and they should have been required to deliver it up, for the purpose of being disposed of agreeable to the decree. In ordering the sale of the land also, there is a material defect. It is no where identified. The commissioners are ordered to sell the real estate, without knowing by any thing but some other information than any which is given them in the cause, what they are to sell. There is also error in decreeing the property to be sold for cash. It is my opinion, that the Court had not the power to order the land to be sold on a shorter credit a Laws Ala. 328. than twelve months, " and that every reason exists for a sale of personal property, ordered under the circumstances of this case, to be made on a credit, which could in any case. There is also error in not ordering an account of

the moneys which the administrator had disbursed. He alleges in his answer, that he had paid out upwards of two thousand dollars, yet the whole property of the estate is ordered to be sold without taking these payments at all into consideration. A decree is rendered against Harriet Gayle, when it no where appears that she had any interest in the matter in controversy; and this decree is upon a judgement *pro confesso*, after she is admitted to be an infant, by the appointment of a guardian *ad litem*, to answer for her; which is certainly erroneous. The decree also, is against Mrs Eastin, when her husband only is made defendant to the bill. There is no notice taken of the notes given by Mary Gayle for the negroes bought by her at the sale, which as to them, is implied by, though not expressly set aside; these notes should have been cancelled and filed in the office, so far as the sale was avoided. It is thought best not to decide whether a purchase by an executor or administrator, at his own sale, would in all cases be void. There is no difficulty felt however, in coming to the opinion, that considerable inadequacy of price in such purchase would, of itself, be sufficient to set aside such a sale; and if that inadequacy arises from a belief that there was a lien covering the property, which on investigation at law, was found not to be the case, it would be cause for setting aside the sale, in order that abuses might be prevented. In this instance, the administratrix became the purchaser, under the belief that the mortgage must be satisfied; and that she was, in additition to the price bid, bound to pay the debt due to the defendant. From this circumstance, the sum bid was greatly less than the negroes were worth. It is determined that the mortgage gives no preference to the defendant over other creditors. The only legal result must be, that the sale under the proof, &c. in this case, would have to be set aside, and the negroes sold for what they will bring on the legal credit, without such incumbrance; but as the case will be open for additional evidence, this point is left open for the decision of the Circuit Court. This at once completely sustains the jurisdiction of the Court of Chancery, as the County Court would have no power to set aside the administrator's sale.

The answer of John Darrington is a great departure from his duty as guardian; and although it might not of itself be cause of reversing the decree, yet it probably

JULY 1824.

Gayl. et al
v.
Singleton,

would be best that the agent for the defendant should not, after it is ascertained that he is such, be continued as guardian *ad litem*, to one of the infant plaintiffs.

It is unnecessary to consider the other assignments. The decree must be reversed, and the cause remanded ; each party in the Court below having leave to amend, if under the decision, it should be thought necessary to do so.

THE CHIEF JUSTICE not sitting.

KELLY and GOLDTHWAITE, for the plaintiffs in error.

PARSONS, for the defendant.