## GOULD *vs.* HAYES,. *et al.*

1. When two courts have concurrent jurisdiction, that which first takes cognizance of a cause has a right to retain it, to the exclusion of the other.

2. The original jurisdiction of the Court of Chancery is not affected by the statutory jurisdiction conferred upon the Orphans' Court, over the settlement of estates, except when prohibitory or restrictive words are used denying to the Court of Chancery the exercise or continuance of its jurisdiction.

3. The Court of Chancery may take cognizance of the settlement of an executor's administration after it has been commenced in the Orphans' Court, when there are complicated matters of account to be settled, and trusts to be executed, which the Orphans' Court cannot enforce.

4. When suit has been commenced prior to the passage of the act of 1846, by the distributees of an estate against the executor after his removal from office, for an account of the assets that have come to his hands and the waste committed by him, the subsequent passage of that act cannot operate retrospectively to defeat the suit if properly commenced.

5. Prior to the act of 1846 a suit might be maintained by the distributees of an estate against the executor after his removal from office, to make him account for the assets that had come to his hands.

6. A testator by will directed that his estate should be kept together until his eldest son arrived at the age of twenty-one, and that the profits derived therefrom, after paying the expenses of his plantations, &c., together with all moneys accruing to his estate from other sources, should be invested in bank stock to constitute a permanent fund, of which the interest or dividends should be equally divided among his children. After the removal of the executor from office, the distributees filed a bill against him, charging him with waste, negligence, &c., and praying an account and settlement of his administration. *It was held,*

    1. That the complainants occupied the position of residuary legatees, and must bring before the court all persons interested in the fund which they sought to appropriate.

    2. That the administrator *de bonis non* was a necessary party defendant, and that the bill should show that no claim of his was set up, or, if set up, that it constituted no charge upon the fund sought to be condemned which should intervene between the complainants and an absolute appropriation of the fund to their benefit.

Gould v. Hayes et al.

3. That the creditors, if any, should be brought in before the master in taking the account, as in case of a creditor's bill:.

4. That advantage might be taken on *general· demurrer* of the want· of proper parties.

7.. The omission of an indispensable party is an error ·for which a decree may be reversed, although· the objection is taken for the first time in the Appellate Court.

8. Reasonable compensation will not be refused to executors and administrators, except in cases of wilful default· or gross negligence, by which loss to the estate has been occasioned.

9. When a testator directs his estate to be kept together for· distribution at a future period, the executor, if his conduct entitles him to any compensation, *has a right to insist upon annual compensation,* under the· act of 1841, (Clay's Digest, 228 § 39,) instead of commissions on the amount of receipts and disbursements; and in ascertaining that compensation regard must be had "to the amount of labor performed, the· responsibility involved, and the value of the estate.?

10. But for services performed previously to the passage of the act of· 1841, an executor's compensation must be determined by the then existing law.

11. The mere failure to make annual· returns will not deprive an executor of his right to compensation,. when he has not been guilty of· any gross neglect of duty.

ERROR to the Chancery Court of Greene. Tried before the Hon. W. W. Mason.

THE bill in this case was filed by the children of George· Hayes, deceased, against William P. Gould, his executor, after· his removal from office. The bill charges the executor with waste, negligence, &c., and prays an account of the assets that have come to his hands. The bill was filed in May, 1845, and the executor had previously filed his accounts and vouchers for final settlement in the Orphans' Court. The will of the testator directed that his debts should first be paid; that his executor should have power to dispose of all his lands lying out of this State; that his children should receive a liberal education; that his negroes should be divided among his three children, his eldest son to receive his share on arriving at twenty-one, and the other shares to continue under the control and management of his executors until his two daughters should respectively arrive at that age. The fourteenth and fifteenth clauses of the will are as follows, viz:

"14. My plantations and hands are to be managed as they now are until my executors shall deem it expedient and proper to cause others to be opened."

"15. All the surplus proceeds, after the maintenance and support of these plantations, together with all moneys arising from the sale of lands, or accruing to the estate from any other sources, except what is already disposed of, shall be vested in the safest bank stock, which is to be a permanent fund, the interest or dividends to be equally divided among my three children."

THORNTON & HALE, for plaintiff in error:

The assignments of error in this cause raise two questions, one in relation to the equities of the bill and the propriety of pronouncing a decree in favor of the complainants under the facts disclosed in the record, and the other in relation to the compensation of the executor.

These complainants are not the proper parties to this bill, the object being to compel Gould, the out-going executor, to account for the funds of the estate in his hands as executor, and no decree could properly be rendered in their favor for such funds under the facts disclosed in the record.

1. Because the estate was still owing a large amount of debts, and the assets of the estate were first bound for the payment of debts before the distributees can ask that any thing be set apart for them.—5 Ala. 14.

2. Under the provisions of their father's will the estate is to be kept together under the charge of the executor, until Charles Hayes, one of the complainants, arrives at the age of twenty-one years, and that time has not yet arrived, and until that time does arrive, they are only entitled to a maintenance out of the profits; and the court has no power to defeat the will of the testator by decreeing to the distributees the very fund that he has devoted to the payment of his debts, or directed his executor to invest.—8 Por. 296; 8 Ala. 464.

It is true they have an ultimate interest in the proper application of whatever funds may be in his hands, for they are entitled at a future time to whatever may remain after the payment of the debts of the estate; but that does not authorize them to invoke the aid of a court of chancery unless they can show collu-

sion between Gould and Leachman, the adm'r. *de bonis non*, or that by reason of the insolvency of Gould and his securities, (of which there is no pretence, and it is not charged in the bill,) they are likely to sustain irreparable injury.—5 Ala. 523.

We insist that Leachman is a necessary party to this bill. Now this is not the case simply of an administrator *de bonis non* succeeding an out-going administrator in chief, but Leachman, when appointed administrator *de bonis non*, with the will annexed, succeeded to all the executorial rights and duties created by the will, (4 Ala. 683, and cases there cited,) and was bound to pay the debts of the testator left unpaid by his predecessor, and execute the other trusts of the will; and we have seen that whatever assets of the estate derived from crops and other sources were in the hands of Gould were devoted, by the provisions of the will of the testator, first to the payment of his debts; Leachman then had a clear right to these funds for the purpose of carrying out this trust under the will, and having the right, would not a court of equity afford him or any creditor of the estate of Hayes the necessary remedy to obtain them?

However this might be upon general principles of equity, the statutes of 1806 and 1821 expressly give the administrator *de bonis non* the action of account against the out-going representative, when removed for any of the causes specified in the statute. (Clay's Dig. 221, §  ,) and Gould was removed for one of the very causes specified in the act. These two statutes being upon the same subject matter, are to be construed in *pari materia*, and their effect, to the extent for which we contend, is recognized in 2 Por. 588, and 6 Ala. 39 ; and, in all cases where actions of account may be brought, a court of chancery has concurrent jurisdiction with the courts of law, and especially when actions of account are given by statute.—2 Marsh. 338 ; 1 J. J. Marsh. 182 ; 5 Pet. 495 ; 9 Johns. 470.

Then, as Leachman is entitled to the funds, and has a clear remedy for obtaining them, he is surely the proper party to sue, and not permit the infants to recover from Gould a fund to which they are not entitled, and then Leachman or some creditor to file a bill and recover the same fund from them in order to appropriate it to the payment of the debts of the estate, as provided by the will of the testator. Courts of chancery hate a multiplicity of suits.

39

Gould v. Hayes et al.

But there is another view of this case that shews the necessity that Leachman should be a party to these proceedings for a settlement of Gould's account. If upon the final settlement of the accounts it should turn out that the estate was indebted to Gould, he would be entitled to a decree over for the amount due him.—1 Story Eq., § 522; 1 Wash. Va. R. 134. That decree ought not to go against the infants and subject the land that has descended, but against Leachman, for he has the personal property of the estate in his hands, which is first liable to pay the debts.

But waiving the question of parties, we insist that under the facts disclosed in the record, the bill should have been dismissed at the hearing.

A Court of Chancery, in the matter of the administration of estates, has a concurrent jurisdiction with the Orphans' Court, and not an exclusive jurisdiction, and the rule is, that whichever of two concurrent jurisdictions first possesses itself of a cause, has a right to proceed and settle it.—9 Ala. 479; 4 Johns. Ch. R. 409; 7 Paige 68; 2 Stew. 15; 15 Ala. 269; 16 Mass. 171; 1 Hawks 78. And there is no matter with which Gould was chargeable, as shown upon the hearing, which the Orphans' Court was not competent to settle, (9 Por. 648; 2 ib. 328,) and, under the act of 1839, he was chargeable with the rent of land as assets.—Clay's Dig. 199.

When the special matters charged in a bill giving a court of chancery jurisdiction are denied by the answer and fail upon the proof, the bill should be dismissed.—3 Lit. 378; 4 Bibb 184; 7 Cranch, 69; Smedes' Dig. 128, § 178.

In this case all the special matters charged in the bill, such as waste of the realty, conversion, embezzlement, or mal-administration of the personalty, are denied in the answer and not sustained by the proof.

2. Whatever may have been the rule as to compensation in England or elsewhere, it is the settled law of this State that reasonable compensation is never refused, except in cases of wilful default, or gross negligence, whereby injury accrues to the estate.—10 Ala. 914. And the executor having kept the estate together under the provisions of the will of his testator, is entitled to a reasonable annual compensation for his labor, care and responsibility in the management of the estate, (Clay's Dig.

Gould v. Hayes et al.

228, § 39) and that it is imperative upon the court to give this specific annual compensation under a fair construction of the statute.—*Ex parte* Simonton, 9 Porter 383 ; 5 Johns. Ch. 113 ; 17 Ala. 527, and cases there cited.

But the commissions allowed are not sufficient in amount to compensate the executor even in the case of an ordinary administration.—10 Ala. 966. The ordinary duties of an administrator are, to sell the property, collect the assets, pay the debts and distribute the estate ; but here there are extraordinary duties imposed by the will, and therefore additional compensation should have been allowed.—9 Ala. 900 ; 5 Monroe 65. Compensation for time and trouble shall be allowed.—5 Ala. 315 ; 9 Por. 667.

It should have been referred to the register and master to fix and allow a reasonable compensation, as the law has fixed no standard upon this subject.—1 Dev. & Bat. Eq. 491 ; 1 P. Wms. 142 ; 9 Ala. 900.

CLARK & CAMPBELL, *contra :*

1. A court of chancery has concurrent jurisdiction with the Orphans' Court to call executors and administrators to account. 2 Williams on Ex'rs. 1437, (ed. of 1841 ;) 3 Dana 18 ; 2 J. J. Marsh. 198 ; 3 Bibb 456 ; 6 Ohio 429 ; 1 Har. & J. 151 ; 2 Gill & J. 14 ; 3 Munf. 83 ; Clay's Dig. 226, § 29.

And although the court of chancery, in an ordinary administration, might not be willing to encourage the exercise of this jurisdiction, still it has no power in the absence of a legislative restriction to refuse, (1 Story Eq. Juris. § 542,) and this court has, under its former and present organization, from time to time recognized this jurisdiction.—Gayle v. Singleton, 1 Stewart 566 ; Cherry v. Belcher, 5 S. & P. 133 ; Dobbs v. Cockerham, 2 Por. 328 ; Levens v. Butler & Wife, 8 ib. 380, 400 ; Dement v. Adm'r. of Boggess, 13 Ala. 140 ; Scott v. Abercrombie, 14 ib. 270 ; King & Ansley v. Smith & Steele, 15 ib. 264.

And the circumstance that the removed executor had filed his accounts in the Orphans' Court for an annual or even a final settlement, and a day set for that settlement, is not sufficient to oust the court of chancery of the exercise of its jurisdiction.— King & Ansley v. Smith & Steele, 15 Ala. 264 ; Blakey's

Adm'r. v. Blakey's Heirs, 9 ib. 394; Levens v. Butler & Wife, 8 Por. 397-8-9; Cherry, &c. v. Belcher, 5 S. & P. 133.

And this is more especially the case where infants are the legatees.—1 Story's Equity Juris. § 600; 2 Williams on Ex'rs. 1484, (ed. of '41.)

But the bill is not only for an account of the administration of the assets of the testator in the payment of the debts, but for an account of the manner in which the trusts of the will have been executed. The most of the duties of the executor are in execution of express trusts. The crop made the year of the death of the testator and the debts due to him at his death, are expressly set apart in the will for the payment of debts, but the subsequent crops are not; they are directed to be invested in bank stock, and the dividends to be paid to the complainants. The will also provides how complainants shall be supported and educated, and out of what funds. The complainants are therefore the beneficiaries under the will, and the executor, Gould, their trustee, and as such, liable to account to them, and no other, in a court of chancery, and no where else. As to the profits of the plantation, and how invested or applied, the Orphans' Court had no jurisdiction.—2 Lomax on Ex'rs. 527; 2 Williams on Exr's. 1485, (ed. of '41;) 1 Story Eq. Juris. § 600; Portis v. Creagh's Exr's., 4 Porter 332; Levens v. Butler & Wife, 8 ib. 399; Harrison v. Harrison, 9 Ala. 478; Billingslea, &c. v. Harris, &c. Exr's. 17 ib. 214.

Besides this, the bill shows that although the executor had the control, under the will, of certain lands for the purpose of carrying on the plantations, there were certain other farms or plantations left entirely undisposed of. These lands vested in the complainants as the heirs at law of the testator, and were rented out by the executor, and the account shows the sum of about $1400 actually received by him therefrom. These lands not passing by the will, the rents belonged to the complainants, unless they were made assets by the act of 1839, (Clay's Dig. 199, § 36,) which we do not believe they were, and if they belonged to complainants, the executor, Gould, by taking control of said lands and receiving the rents, became a trustee for the complainants, and liable to account in chancery, and not in the Orphans' Court, therefor. These lands were not rented out at public outcry, as directed by the statute. Could the rents,

Gould v. Hayes et al.

therefore, become assets of the testator?—1 Rice's Eq. R. 198; Terry v. Ferguson, Adm'r., 8 Por. 500; Levens v. Butler & Wife, ib. 380; Smith's Heirs v. Smith's Adm'r., 13 Ala. 329.

The power under the will to sell any of the lands, if carried out, is the execution of a trust, and the executor could only be called to account as such trustee.—See the case of Conklin v. Egerton's Adm'r., 2 Wend. 430.

The title to the real and personal estate, on the death of the testator, vested in the complainants, and the enjoyment of the property could not be withheld from them even by the administrator *de bonis non.*—Heirs of Capell v. McMillan, 8 Por. 197.

The complainants were the proper parties to exhibit the bill. —Clay's Dig. 226, § 29. The administrator *de bonis non* had no interest, and the statute of 1806, (Clay's Dig. 221, § 4,) did not alter the general rule, that no one should be made a party who has no interest.—Story's Eq. Pl. § 231; Kerr, &c. v. Watts, 6 Wheat. 550. And if the administrator *de bonis non* had exhibited the bill alone, or in conjunction with the complainants, it would have been demurrable. This bill was filed before the passage of the act of 4th February, 1846.—Session Acts 1845-6, p. 13; King & Ansley v. Smith & Steele, 15 Ala. 264; Upchurch v. Norsworthy, 12 ib. 533; Nolly v. Wilkins, Ad'm. *de bonis non,* 11 Ala. 872; Willis v. Willis' Ad'm. 9 ib. 721; Moore v. Armstrong, 9 Por. 697; Bowie v. Minter, 2 Ala. 406; Swinks, Ad'm. v. Snodgrass, 17 ib. 653; Chamberlain v. Bates, 2 Por. 550; Prosser v. Yerby's Ex'r. 1 How. (Miss.) 93; Cheatham v. Bufort, 9 Leigh, 580.

The statute of 1806 (Clay's Dig. 221, § 4) did not enlarge the powers of an administrator *de bonis non.* The right of action is only for such goods and chattels as came to the possession of the former administrator. It did not extend to money, the proceeds of property properly administered upon. Such proceeds are trust effects in the hands of the executor or administrator who disposed of such property.—1 How. (Miss.) 93; Clay's Dig. 222, § 6.

It was only by the act of 1843, that even in case of insolvent estates, the administrator *de bonis non* could recover the proceeds of effects administered on by a former administrator or executor.—Chamberlain v. Bates, 2 Por. 550. The act of 1846 clearly shows that no decree could have been rendered in the Or-

phans' Court before the passage of that act, (Clay's Dig. 304-5 § 42 *et seq.*,) showing that the decree rendered by the Orphans' Court must be in the names of the respective distributees.—Nolly v. Wilkins, Adm'r. &c., 11 Ala. 872.

Independent of the statute, the administrator *de bonis non* could have maintained an action against his predecessor for any of the goods and chattels of the testator which remained in specie unconverted, and the complainants could not have been parties thereto. The statute is therefore but declaratory of the existing law.

The existence of debts would not authorize a suit by the administrator *de bonis non.* The court, if necessary, would administer the assets for creditors.—Gillespie v. Alexander, 3 Russell 130.; 3 Cond. Eng. Ch. R. 326 ; Thompson v. Brown, 4 J. C. R. 619.; 2 Iredell's Eq. R. 489.

The court can apply the funds to the payment of debts if needed therefor, and this application is to be made on petition of the creditors.—Gillespie v. Alexander, 3 Russell 130. The removed executor has nothing to do with its application, if he has delivered over the unadministered effects to his successor.

The case made by the bill and proofs shows that the court of chancery had jurisdiction, and that it had power to render the decree in favor of the complainants.

2. As to compensation. It is a rule in equity that a trustee is never permitted to make any profit to himself in any of the concerns of the trust.—Brown v. Rickets, 4 J. C. R. 305. On the other hand he is not liable for any loss which occurs in the discharge of his duties, unless he has been guilty of negligence, malversation or fraud.—1 Story's Eq. Juris. §465. It is the duty of a trustee to do all acts which are necessary and proper for the execution of the trust he has undertaken.—Harrison, &c. v. Mock, &c. 10 Ala. 193 ; 2 Story's Equity Juris. 1268.

But when he proves himself faithless and neglectful, he is not entitled to any compensation.—Story on Agency, § 331-2.

It was one of his duties as a trustee to render accounts annually. These accounts are not intended for his own benefit, but for the benefit of the *cestuis que trust.* He, however, never rendered any until after he was removed from the trust, and then in such a confused state that no opinion could be formed of the profits of any one year.—Clay's Dig. 198, 267, 582; Wright v. Wright, 2 McCord's Chan. R. 195.

Compensation is allowed to a trustee for time and trouble in the performance of all acts which are necessary and proper for the due execution of the trust.—10 Ala. 193. Is there any of that management which a prudent man would execise in regard to his own estate? This is the test.

But in addition to this the complainants were taxed with all the costs of this suit, when they were the successful party and ought to have had their costs, or at most each party ought to have paid their own costs; because, if on the part of the complainants some of their charges in the bill were not sustained, the defendant himself, when he came before the master, abandoned nearly $3000 that he had previously claimed as entitled to retain of annual salaries.—Dan. Ch. Pr. 1520, (note 1;) Hopkins' Ch. R. 344 ; 2 J. J. Marsh. 444 ; Cullingsworth v. Loyd, 2 Beav. 394 ; 17 Eng. Ch. R.; Spencer v. Spencer, 11 Paige, 299 ; U. S. Dig. for '48, p. 150, § 716.

But it is contended that by the act of 1841, (Clay's Digest, 228, § 39,) that where, by the directions of the will of the testator, an estate is kept together, that it becomes imperative upon the Judge of the County Court to make an annual allowance to the executor for his attention and services. The general rule of construction is, no doubt, as laid down in Tarver v. Commissioners' Court of Tallapoosa, (17 Ala. 531-2,) that where the words "it shall be lawful" are used in the statute, they are peremptory, where the public or an individual has a right de jure that the powers conferred by the act should be exercised.—9 Por. 392 ; Pacon's Ab. 239 ; 5 J. C. R. 112 ; 1 Pet. 64. But none of the cases cited, or which could be cited, enables us to say that a discretion was not intended by the Legislature to be exercised by the judge of the County Court. The statute is not that the judge shall allow an annual compensation in lieu of commissions, but only that if disposed so to do, he shall have full power to that effect.

The amount and form of the allowance to the executor was clearly one of discretion.—Phillips, Adm'r. v. Thompson & Wife, 9 Por. 664 ; Harris v. Martin, 9 Ala. 895 ; Magee v. Cowperthwaite, 10 Ala. 966.

An appellate court will not ordinarily revise a decision as to the quantum of allowance. Such is the rule on appeals in Admiralty in cases of salvage.—1 Gallison, 133 ; 10 Peters 108.

And courts of chancery and courts of appeal from their decisions are governed by the same principle.—2 Dev. & Bat. Eq. R. 400; Peyton v. Smith, ib. 325, 348; Brewer v. Vanarsdale, 6 Dana 204; Bennett's Ch. P. 100, 147-8.

If, upon a review of the whole case, this court should be of opinion that the plaintiff in error ought to have had an annual salary, instead of commissions on the money, still if the commissions allowed were equal to what the court believes the annual salaries ought to amount to, it will not reverse.

CHILTON, J.—This is a suit by the children of George Hayes, deceased, calling upon Gould, the late executor of their father's will, to account for the real and personal estate which came to his hands or under his control, and charging him with gross negligence in its management, as well as multiplied acts of malfeasance and waste in regard to it.

The case has been elaborately and very ably argued by the counsel on both sides, and we proceed briefly to announce our conclusions, attained after a careful examination of the unusually large record. Although very many points have been argued, yet we think they are collateral to three leading inquiries, to which we propose confining what we have to say. These are, first, does the bill contain allegations sufficient to make this a case proper for equitable relief? second: conceding that it does, is the proof of those allegations sufficient to justify a decree? and third, whether, if the executor is entitled to any compensation, he should have an annual allowance made to him, instead of commissions upon the amounts collected and disbursed by him.

1. And first, as to the case made by the bill. It is objected that the jurisdiction of the chancery court cannot be maintained, because the Orphans' Court, having concurrent jurisdiction, and being in possession of the cause when this bill was filed, had the right to retain and proceed with said cause to a final settlement. The law is too well settled to be questioned, that where two courts have concurrent jurisdiction, that which first takes cognizance of the cause has the right to retain it to the exclusion of the other. —4 Burns Ecc. L. 266; Harrison v. Harrison et al. 9 Ala. 479; Stearns v. Stearns, 16 Mass. 171; Flournoy's Ex'r. v. Holcomb, 2 Mun. R. 34; King & Ansley v. Smith & Steele,

Gould v. Hayes et al.

15 Ala. 269, and cases cited; Nelson & Hatch v. Dunn et al. ib. 514; 9 Wheat. 532. But we do not think this well settled principle applies to the case before us. Without stopping to inquire whether the Orphans' Court had obtained such jurisdiction in this case as would, in cases where the jurisdiction of both courts was entirely concurrent, prevent the Chancery Court from interfering, we think that it is very clear that there are executory trusts created by the will of George Hayes which devolved upon the executor, and which the Orphans' Court had no power to enforce. Such, for example, as the investment of the proceeds of certain crops to be raised in bank stock, and the payment of the dividends to the complainants, the designation of . a fund for the support and education of the complainants under the direction of the executor, the outfit for the daughters under the 11th section of the will, the sale of lands lying without this State, and the like. To take an account growing out of the execution of these express trusts, or the enforcement of their execution, if not of. exclusive equitable cognizance, certainly justified a resort to a court of equity as being the only tribunal which could afford *adequate* relief. So that we are of opinion, that even had a settlement between the executor and the estate been pending at the time this bill was filed, it would have been entirely competent for the Chancery Court to take cognizance of the cause and to arrest the further action of the Orphans' Court in regard to it. The complicated and numerous matters of account, connecting themselves either immediately or remotely with these express trusts, very clearly show, we think, that the Court of Chancery alone could have furnished adequate relief.

After the passage of the statute in England requiring the spiritual courts to make distribution, it was insisted that distribution ought to be made in that court, but in answer to the objection Lord Keeper King, as early as 1682, said that " the spiritual court had but a lame jurisdiction, and there being no negative words in the act of Parliament, he thought a bill for distribution very proper in this (chancery) court."—Matthews v. Newby, 1 Vern. 133. Judge Story says, " for a great length of time th ) usual resort has been to the Court of Chancery to settle the administration of estates ; so that, practically speaking, in cases of any complication or difficulty, it has acquired almost exclusive jurisdiction." There are many cases where it is impossible

for any other court to administer full and satisfactory relief between all parties in interest."—1 Story's Eq. Juris. § 543. The remedy in the Orphans' Court being cheaper and more expeditious than that afforded in Chancery, this court, at an early day, doubtless more as a matter of sound policy than of strict legal requirement, was inclined to confine heirs, distributees, &c., of deceased persons' estates, to the Orphans' Court, in cases where the powers of that court were adequate to administer full relief.—Gayle v. Singleton, 1 Stew. 572. But we apprehend the rule is undeniable, that the rightful jurisdiction originally exercised by courts of equity, is not impaired by legislative enactment conferring a similar jurisdiction upon any other court, unless there be prohibitory or restrictive words used, denying the exercise or continuance of such jurisdiction to the courts of chancery.—Story's Eq. Juris. § 80.; Dement v. Boggess, 13 Ala. 143. And this court has repeatedly sanctioned the exercise of such jurisdiction on the part of the Chancery Courts.—Singleton & Gayle, supra; Cherry v. Belcher, 5 Stew. & Por. 133; Dobbs et al. v. Distributees of Cockerham, 2 Por. 328; Levens v. Butler & Wife, 8 ib. 300.; Blakey's Adm'r. v. Blakey's Heirs, 9 Ala. 394; Scott v. Abercrombie, 14 ib. 270; King & Ansley v. Smith & Steele, 15 ib. 264; Horton, Adm'r. v. Moseley, 17 ib. 794; Pearson et al. v. Darrington, 18 ib. 348.

But it is further strenuously insisted, that the administrator with the will annexed, and not the distributees, should be entitled to call upon the executor to account, and that the several statutes of 1806, 1821 and 1846 must all be construed in pari materia, as constituting but one body of statutory laws upon this subject, and that these statutes clearly recognize the right of Leachman, the administrator de bonis non with the will annexed, to the assets belonging to the estate in the hands of the executor, and to an account for the waste committed, or the effects misapplied by him.

It must be borne in mind that this bill was filed before the statute of 1846 was passed, and the case must be decided without regard to that statute; for I take it to be the law, that although the act at the time of the trial authorized the administrator de bonis non to maintain a bill against the administrator in chief, it does not relate back so as to destroy the complainants' action if well brought. It is a maxim as old as the law,

Gould v. Hayes et al.

that "*nova constitutio futuris formam imponere debet, et non praeteritis.*"—Braot. Lib. 4, fol. 228.; 2 Inst. 292; Bacon's Abr. Tit. Statute, C. In general, the law as it existed at the time the action was commenced must decide the rights of the parties, unless the Legislature express a clear intention to vary the relation of the parties.—Hitchcock v. Way, 6 Adol. & Ellis 943.; S. C. 33 E. C. L. R. 253, and cases there cited. And this rule applies as well to remedial as to other statutes.—Per Story J., Prince v. U. States, 2 Gal. C. C. 208. A retrospective statute in respect either to contracts or property would violate every sound principle, and partakes in its character of the mischiefs of an *ex post facto* law.—2 Dwar. Stat. 677, 680-81.; Paddon v. Bartlett, 3 Adol. & Ellis, 884; 30 Eng. C. L. R. 258. The rights of the parties, whatever those rights were, attached before the act of 1846 was passed, and as it contains no express words giving it a retrospective operation, the court would violate not only sound principle, but multiplied precedents, were we to construe it so as to defeat the action rightfully commenced.—See Latless v. Holmes, 4 T. R. 660.; More et al. v. Phillips, 12 Me. & Wels. 536; Unwin v. St. Quintin, 11 ib. 286.

The act of 1846 out of the way, what is the correct construction of the previous acts conferring upon the administrator *de bonis non* certain remedies against the first administrator or executor? We think that construction has been very clearly settled by several adjudications of this court; adjudications which we are unwilling to disturb, even though we should doubt their correctness, as no hardship or inconvenience can result from adhering to them. We should on the other hand impose a hardship upon suitors to require them to conform to the law which we unsettle or render doubtful by our decisions. Hence it is that courts are usually governed by precedents, which establish rules governing the practice, or settling the construction of statutes or questions respecting real estate.—2 Dwarr. Stat. 785; Doe ex d. v. Allen, 8 T. R. 504; Broom's Maxims, 65 and cases cited.

Let us then turn to some of the previous decisions of this court, and see whether the settled construction of these statutes is not adverse to that insisted on for the plaintiff in error.—In Chamberlain v. Bates, 2 Port. R. 550, it was held that the authority of an administrator *de bonis non* extends only to such of

the personalty of his intestate as remains in specie, unaltered or unconverted by his predecessor, and so far only can he be regarded as a trustee for distributees and creditors ; that the commission or letters of an administrator *de bonis non*, as his name imports, extends only to the unadministered assets ; and that he could maintain no action against the former executor or administrator, either at law or in equity, for assets wasted or converted by him, but such suit must be brought by creditors, legatees or distributees. In this case the former administrator had died, and the administrator *de bonis non* brought assumpsit against the representative of such former administrator, to recover a sum of money alleged to have been received by him, and never accounted for or paid over. The action was disallowed. The Chief Justice, in delivering the opinion, however, said, that " if administration be granted to an improper person, or by an improper court, and afterwards revoked, the subsequent administrator properly appointed has a general commission of the administration, and is thereby entitled to call the displaced administrator to account, as in the case of an administrator *de son tort.*" In the case of the Judge of the County Court of Benton v. Price et al. 5 Ala. R. 36, the act of 1806 is referred to, and the court say " the act only applies where letters of administration have been revoked for any of the causes mentioned in it," and that even in such case, it may be questionable, whether an action can be maintained where the assets have been wasted or converted.—In Moore et al. v. Armstrong, 9 Port. R. 697, the administrator in chief became a non-resident, and the bill was filed against him by the distributee ; the administrator died, and the bill was amended, making the administrator *de bonis non* a co-plaintiff with the distributee; a demurrer for this misjoinder was held to have been properly sustained.

In Willis v. Willis, 9 Ala. R. 721, the Orphans' Court proceeded to render a decree and award execution in favor of the administrator *de bonis non* against the former administrator, whose letters of administration had been revoked for a failure to renew his bond. The court cite the previous cases of Chamberlain v. Bates, and Judge Benton County Court v. Price, *supra*, and hold the decree erroneous, at least so far as the award of execution is concerned.

In Nolly v. Wilkins, 11 Ala. R. 872, the administrator with

Gould v. Hayes et al.

the will annexed was cited to give additional security. He came in, filed his accounts and vouchers for settlement, and resigned his trust. A settlement was ordered, and Wilkins was appointed administrator *de bonis non,* in whose favor a decree was afterwards rendered, and execution awarded for the assets in the hands of the former administrator. It was held that such administrator could only recover from his predecessor, whether he has resigned or been removed from his office, the assets which remain in his hands in specie unconverted, and that a settlement could only be made between him and the distributees or legatees of the estate. This, of course, was confined to cases where the estate was solvent; for where the estate proved insolvent, the act of 1843 confers upon the administrator *de bonis non* the right to sue the former administrator, either in the Orphans' Court, or any other court of law or equity, to recover the assets belonging to the estate.

In King and Ansley, administrators, v. Smith and Steele, 15 Ala. R. 264, the plaintiffs as administrator *de bonis non* with the will annexed of Jeremiah Smith, deceased, filed their bill in equity against Smith, the former administrator, who had been removed, and his security on his bond, for an account of the assets of the estate, which the former administrator had received and failed to account for, &c. We held that prior to the act of 1846, a Court of Chancery would not entertain a bill filed by the *administrator de bonis non* against a former executor or administrator in chief of the same estate, for an account of the assets that had been wasted, embezzled or misapplied by him. True, this case might well have turned exclusively, as it did mainly, upon another point, namely, that the former executor had come to a full and final settlement with the Orphans' Court, which had jurisdiction, and which we held concluded the parties in equity, no grounds for impeaching the decree being averred in the bill. Nevertheless, the other point was expressly decided, and, as will appear by the previous cases, was sustained by their authority.

It is very manifest from an examination of these cases, that this court has not been disposed to extend the provisions of the 40th section of the act of 1806, but by a strict construction of its provisions, to confine its operation to cases where the letters of administration have been revoked, because they were granted upon insuffi-

cient security, and the administrator has failed to give sufficient security upon being required to do so by the Orphans' Court, or when it should appear upon examination, that the administrator had embezzled, wasted or misapplied the decedent's estate.

The fourteenth section of the act of 1821 authorizes the court to require of the executor, administrator, or guardian, further security, upon complaint being made by any of those who have gone on his bond, or when it is made to appear that there are sufficient grounds for believing that he is about to waste, embezzle or misapply, or remove from the State, the property committed to his charge, or on proof of gross neglect, &c., or that his securities have become insufficient, as well as for the causes heretofore specified. This section fails to provide what the court shall do on the failure of the administrator or executor to give the additional security which is required, nor does it confer any authority upon the court to remove such delinquent administrator; but by the fifth section of the same act, (Laws of Alabama by Toulmin, 193,) the judge of the County Court is empowered to repeal letters testamentary, and of administration, to appoint and displace guardians, &c., and to make all necessary orders for the issuing process and other purposes within his jurisdiction, according to such regulations as are or may be established by law in such cases; so that we apprehend the argument of the counsel for the plaintiff in error, that the fourteenth section would be utterly powerless, unless, for its enforcement, it may borrow the consequences attached as the penalty by the fortieth section of the act of 1806, fails, since this act justified the court in displacing the executor or administrator. But without consuming further time on this point, we feel quite sure that the construction placed by this court, in the cases previously cited, is opposed to that contended for by the counsel for the plaintiff in error, and shows that this suit may well be maintained in the name of the distributees. The court has refused to indulge a doubtful construction in favor of enlarging the powers of an administrator *de bonis non*, from considerations of policy. There would usually be delay, and cases might readily be imagined where there would be great hardship and injustice done to legatees, distributees and creditors, by continuous removals and appointments of successors, if the creditor or the distributees or legatees should be compelled to wait the tardy pro-

Gould v. Hayes et al.

cess of a suit between the out-going administrator and his successor, and perhaps again between the latter and his successor, until, to say nothing of the hazard of total loss consequent upon these changes, the funds would be greatly lessened by costs and commissions as it swept along the tide of litigation.—Chamberlain, adm'r. v. Bates, adm'r. 2 Port. R. 559; Coleman v. McMurdo, 5 Rand. R. 51.. We think the statutes furnish no objection to the maintenance of the action directly by the complainants to this bill.

But it is contended for the plaintiff in error, that the will in this case creates continuous trusts, which devolve upon the successor, and that according to its provisions, the complainants are entitled to no decree other than to provide for the security of the assets, which are not shown to be in any danger, and that, therefore, the bill was prematurely exhibited. The demand against the executor, which these complainants assert, and the decree itself, is for moneys which they insist he should pay.. If this fund, or any portion of it, is needed to pay the debts due from the estate, it is clearly competent for the Chancery Court to call the creditors before it, and to make this disposition of it.. By the fifteenth clause in the will, all the surplus proceeds, after the maintenance and support of the plantations, which the testator desires should be kept up, together with all moneys arising from the sale of lands, or accruing to the estate from any other sources, except as is otherwise provided in the will, are required to be invested in the safest bank stock, which is to be a permanent fund, the interest or dividend to be equally divided amongst the testator's three children.. It is the duty of the court, as far as can be done, to effectuate the intention of the testator, by carrying into execution the provisions of his will.. The farms then must be kept up, and the proceeds, as well as the funds derived from other sources, except such as may be required to carry out the previous provisions of the will, must be invested as required, if the same can be profitably done.. But the paramount duty of the executor was, and of the administrator with the will annexed now is, to pay the debts, and until they are paid, the heirs or distributees are entitled to no portion of the estate.—Thrash v. Sumwalt, 5 Ala. R. 14. It may be, for aught that we can judicially know, that after the debts are paid, the exigencies of the estate which is to be kept

together until the period designated in the will, may require the expenditure of a portion of these funds. If so, it is very clear that the administrator with the will annexed should be allowed to appropriate them in that way. So we conclude, that in so far as the discharge of the duties devolved upon the administrator *de bonis non* by the will requires the appropriation of all or any portion of the money here decreed, to that extent should the funds have been decreed in furtherance of such objects. But how could the debts be paid, or the interest of the estate, as respects the duties devolved upon the administrator with the will annexed, be protected and forwarded in the absence of the creditors, and of such administrator? None of them were made parties, or brought before the court, or the master, in any way. The decree therefore, which gives the fund to the complainants absolutely, without regard to the demands existing against the estate which remain unsettled, without regard to the necessities of the estate, growing out of the duties devolved by the will upon the personal representatives, is erroneous. Ordinarily, where the distributees file a bill for an account against an out-going administrator, it may not be necessary to make the administrator *de bonis non* a party.—Draughan v. French, adm'r. 4 Port. R. 352. But the will in the case before us gives the administrator the funds, if necessary to the maintenance and support of the plantations, while it confers upon the complainants the right to demand the means necessary for their maintenance and education, and the payment of the interest or dividends, which will accrue from an investment of the surplus means to be derived from the estate. There can be no surplus until the debts are paid, and until the fact is ascertained, that the condition of the plantations is such as to require no appropriation to be made for their support and maintenance. It then follows, that in taking an account so as to distribute this fund, the administrator *de bonis non* should be made a party defendant, and the bill should show that no claim of his was set up, or, if set up, that the same constituted no charge upon this fund; which should intervene between them, and an absolute appropriation of the money to them, or for their benefit as contemplated by the will. As to the creditors, they may (as we have before said,) be brought in before the master, as in case of a creditor's bill. We think the complainants, in regard to the fund re-

covered, occupy substantially the relation of residuary legatees, being only entitled to the appropriation for their benefit of the surplus or residuum, after satisfying the previous charges upon the fund. In such cases, it is well settled that all other persons interested in the distribution must be made parties, so that only one account may be taken.—Atwood v. Hawkins, Finch, 113; West v. Randall, 2 Mason's C. C. R. 181; Sherrit v. Birch, 3 Bro. C. C. 229; Parsons v. Neville, ib. 365; Julian v. Reynolds, 8 Ala. R. 680; Edwards on Parties, 138; Peacock v. Monk, 1 Ves. Sr. 127; Cockburn v. Thompson, 16 Ves. Jr. 321; Pritchard v. Hicks, 1 Paige's C. R. 270. At all events, the bill should be so framed, as that the interest of all parties might be protected, and the trusts created by the will properly enforced according to the intention of the testator.—Story's Eq. Plead. §§ 104–105, and notes, (4th Ed.)

We are further of opinion, that this defect in the frame of the bill might be taken advantage of on general demurrer; for it is impossible for the court to say what amount will remain after the debts are paid, and the amounts necessary (if any) to maintain the plantations, until an account is taken of these matters, and no account was or could be taken of them under the bill as at present framed, the parties interested therein not being before the court by any of the modes allowed by the practice.—1 Stew. & Port. 817; 2 Stew. 280. The omission of an indispensable party is an error for which a decree may be reversed on error, though the objection be made for the first time in the appellate court.—18 Ala. R. 576. The demurrer therefore should have been sustained, and leave given the party to amend, so as to bring the proper parties before the court, as the practice in such cases is not to dismiss for want of proper parties, but to let the case stand over for an amendment or supplement to the bill, as the case may require.—Rugely et al. v. Robinson, 10 Ala. R. 703; Batre v. Auge, 5 Ala. R. 179; Toulmin v. Hamilton, 7 ib. 369; Alderson v. Harris, et al. 12 ib. 580.

Having disposed of the question of parties, let us consider the next proposition; whether the case made by the record justifies the interposition of the Chancery Court, so as to withdraw it from the Orphans' Court, which had ordered initiatory proceedings for the final settlement of Gould's executorship.

Without in this place going into a critical examination of the

numerous allegations of the bill charging both non-feasance and malfeasance, not only in regard to the executorial duties proper, but also with respect to the several trusts devolved upon the executor by the will, and without stopping to ascertain how far the proof sustains all or any of them, we feel quite sure that the whole case presented by the record is one in which the Court of Chancery is alone competent to afford *full relief.* This is manifest from an examination of the will, and the account which was filed by the plaintiff in error in the Orphans' Court, and which, he insists, exhibits the true condition of the monetary affairs of the estate. The account, aside from the various matters of explanation which the answer discovers, is certainly unsatisfactory. It furnishes no definite idea of the manner in which the estate has been managed, or of the assets remaining on hand. It sets forth the receipt by the administrator of $63,124, and although but a comparatively small amount of debts due from the estate at the time of the testator's death appears to have been paid, still the account brings the estate in debt to the executor in the sum of $3,957, the main bulk of the sums received having been disbursed in the payment of expenses attending the prosecution and defence of law suits, the defraying the expenses of the farms in the matter of overseer's wages, physicians' bills, provisions &c., and still leaving a considerable sum due of debts, which he had contracted, and which remained unpaid when he was removed from office. Besides, a portion of the sums collected for rents accrued upon lands not disposed of by the will, and these descended to the complainants who are the heirs at law of the testator. It is not shown that these lands were rented to the highest bidder at public out-cry, as required by the statute of 1839, (Clay's Dig. 199, § 36,) and if the executor rented them out otherwise than authorized by law, his act was unauthorized, and he would hold the proceeds in trust for the complainants.—Martin, ex'r, v. Williams, 18 Ala. R. 190. To obtain a full discovery, and as indispensable to a correct and satisfactory settlement of this complicated account, we do not entertain a doubt, but that the complainants might properly resort to the Chancery Court, especially as they had the right to have an account of the manner in which he had discharged the duties imposed by the will as express trusts, and which, we have before shown, were so intimately blended with his executorial

duties as to require an account of each to be taken, in order properly to settle either. The surplus only is to be invested in bank stock, and to arrive at this surplus involves an inquiry as to the execution of the trusts created by the will, as well those within, as those without the jurisdiction of the Orphans' Court.

In addition, however, to all this, the account exhibited by the executor claims, as a compensation for his services, the sum of ten thousand five hundred dollars. As compensation to trustees is allowed as a reward for the faithful execution of the trusts confided to them, it was due to the court, which must admeasure the compensation, and to the parties, that the history of the executor's proceedings should be fully made known. The court could then determine whether it was called upon to compensate intelligence, integrity, industry, vigilance and enlightened activity on the part of the executor in the discharge of his duties, or whether he had not forfeited all claims to compensation by his wilful neglect and gross negligence, which have resulted in damage to the estate he represented.—5 Barr's R. 416-417. For the reasons above stated, we conclude, that although the complainants may have failed to sustain by proof the allegations of waste and mismanagement charged, still, enough does appear unquestionably to justify the interposition of the Chancery Court.

We come now to consider the last proposition, as to the compensation to be decreed to the executor. We do not think that the proof furnishes any evidence that he acted in bad faith, or that he has been guilty of wilful default, or such gross negligence as should deprive him of compensation. The rule upon this subject with us, as asserted in Powell et al. v. Powell, 10 Ala. R. 914, and recognized as correct in a number of cases, is not to refuse to executors or administrators reasonable compensation, except in cases of wilful default or gross negligence, by which loss to the estate has been the consequence.

It is the anxious desire of Courts of Chancery to protect trustees from harm, who act in good faith, and not to subject their conduct to the application of such harsh and rigid rules as to deter all prudent men from assuming fiduciary duties and relations. The court must also look to the number and nature of the duties to be performed, and while it will exact the exercise of that care, diligence and forethought in the discharge of those

duties which a prudent man would bestow upon his own busi-
ness of a similar character, it will not be astute to hunt out and
seize upon every slight departure from the strict line of discre-
tion and good management. Nor should it look merely at the
result, which may be unfavorable to the interest of those concern-
ed, and conclude from thence, that the trustee has been guilty of
gross negligence or mismanagement, since it often happens that
the best laid schemes fail of success. Such is the imperfection
of our nature, and the vicissitudes to which we are exposed, that
even the most wary, discreet and prudent are not exempt from
misfortunes and failures.

In the case before us, the result of the executor's management
was certainly unfortunate to the interest of the estate. Much
the larger portion of what has been received by him has been
expended, as we have said, in cost consequent upon fruitless liti-
gation, upon overseers, in bills to physicians and other expenses;
but when we take into account the number of the duties devolv-
ed upon the executor, the size of the estate, consisting of many
slaves and several plantations with stock of different kinds, as also
of a large quantity of lands, some of which were occupied by ir-
responsible tenants, the enlarged discretion with which the tes-
tator invests his executor by his will, the disposition to insubor-
dination which seemed to prevail among the slaves, and the diver-
sified interests which required to be guarded, it is not to be expected
that the executor should be able to conduct its affairs without in-
curring considerable expense, and without sometimes mistaking its
interest. The farms appear to have been managed at least or-
dinarily well. The litigation, we think, was such as the execu-
tor, influenced solely by a desire to advance the interest and
protect the rights of the complainants, might well have engaged
in, and the points in the main case of such difficulty as to re-
quire the retainer of eminent counsel for their discussion, and
who, of course, were entitled to reasonable compensation for their
services.

Many minor objections to the conduct of the executor, as fur-
nishing evidence of neglect and malversation, were taken by the
counsel for the defendants in error, and were discussed with
much zeal and ability; but without extending this opinion to too
great a length by noticing each separately, we deem it sufficient
to say, that we have examined them, and are unable to bring

our minds to the conclusion, in view of all the circumstances and explanations afforded by the answer and proof, that the executor was guilty of wilful default or gross negligence in the discharge of his duties, so as to justify the court in denying to him all compensation.

In allowing compensation, we think the court should have been governed by the act of 1841, (Clay's Dig. 228, § 39,) which fully empowers the court, in cases where estates are required to be kept together for distribution at a future day by the will of the testator, to allow to the executor for his attention and services, in lieu of commissions, such annual compensation as shall be reasonable, " having regard to the amount of labor performed, the responsibility involved, and the value of the estate."

Under the law as it previously existed, the executor or administrator was allowed commissions upon his receipts and disbursements. However just this may be as respects the administration of estates in the ordinary course of proceeding, it will readily strike every one that cases may occur, where such a criterion for compensation would be wholly inadequate. There may be large estates required to be kept together for the maintenance of families, and the raising of slaves, stock, &c., in the administration of which but a very inconsiderable amount of money would be received or disbursed, yet the whole time and attention of the representative might be required in their management for many years. To provide a remedy in such cases, and to prescribe the manner in which the court should arrive at a reasonable compensation, was the design of the section of the act which we have quoted. He is not only to be compensated for the actual amount of labor performed, but regard is also to be had to the responsibility incurred, and the value of the estate. It is our opinion, that in cases coming within the purview of this act, the court, if it allows compensation at all, should estimate it according to the requisitions contained in it, and should not limit the party to commissions upon the receipts and disbursements.

It may be true, as contended for by the defendants in error, that in this case the Chancellor has allowed the executor, as commissions, a greater compensation than under all the circumstances of this case he would be entitled to according to the provisions of the statute. We express no opinion as to the

amount he should receive, but leave this to be ascertained upon a future reference to the master. All we decide is, that the executor, being entitled to compensation, had the right to insist upon its allowance according to the principles, which the statute embodies as governing the compensation, for his attention and services, namely, " having regard to the amount of labor performed, the responsibility involved, and the value of the estate." These data have been disregarded in the decree before us, and the question of compensation should be again referred to the register, with instructions to ascertain what is reasonable, estimating the same according to the rule laid down in the statute. We think that the executor having the right to compensation, and having been required by the will to keep the estate together for distribution at a future time, has the right conferred by the statute to insist on being compensated in accordance with its provisions; and although the words of the statute are that " the judge shall have full power," &c., yet these should not be construed to vest him with a discretion as to whether he will conform to the statute, or allow commissions merely. Such words, when used in a statute, are regarded as peremptory, where the public or an individual has a right *de jure* that the powers conferred should be exercised.—9 Por. R. 390.; 5 Johns. Chan. R. 113; 1 Ver. 152; 3 Atk. 166; Salk. 609.

The failure of the executor to make annual returns does not, under the circumstances of this case, deprive him of the right to compensation. In Craig & Wife v. McGehee & Armstrong, 16 Ala. R. 41, we held that an administrator who has managed the estate with prudence and in good faith, and who has been guilty of no default in settling when required to do so, does not forfeit the right to compensation by failure to make annual returns. The cases cited from South Carolina, which favor a contrary doctrine, have not been followed by this court. Indeed, these adjudications were upon a statute of that State, which denies compensation if such returns have not been made.—3 Eq. R. 78. In this State, there is no such enactment.

We have shown that the statute of 1846 has no retrospective effect, to take away the right of action from the plaintiffs; so neither can the act of 1841 confer upon the defendant below a right to annual compensation for services rendered anterior to its passage. As to such service, he must be compensated as the

law then stood, and the master, in estimating his allowance for them, will receive instructions accordingly.

Let the decree of the Chancellor be reversed, and the cause be remanded for further proceedings in conformity to the principles stated in this opinion.