## HERNDON v. FORNEY et al.

1. The plaintiff who sues on a penal bond may frame his declaration on the pena part of the bond, without assigning breaches, and such a declaration is not bad when a condition is shewn on *oyer*. The proper course to compel an assignment of breaches, is to plead performance, or such other plea as will show a continuance of the condition.
2. The defendant in an attachment may have his action on the attatchment bond without having ascertained his damages by a direct action on the case against the plaintiff in the attachment.

Writ of Error to the Circuit Court of St. Clair county.

Action of debt on bond. The declaration consists of a single count for the penalty. The defendant craved *oyer* of the bond and its condition, which being given, it appears to be an attachment bond with the condition to be void if the plaintiff in the attachment should prosecute his suit to effect and pay and satisfy the defendant all such costs and damages as he might sustain by the wrongful or vexatious suing out of

the attachment. The defendants then demurred to the declaration, and the Court sustained the demurrer.

The plaintiff brings his writ of error to reverse this judgment.

CHILTON and WALKER, for the plaintiff in error, insisted that the demurrer was premature, if no other question was intended to be raised than that which relates to the plaintiff's right to sue without having first determined the liability of the plaintiff in the attachment. [Davis v. Dickson, 2 Stewart, 370; Meakings et al v. Ochiltree, 5 Porter, 395; 9 John. 507; 1 Wash. 367; 1 Munf. 501.]

In point of fact, however, the judgment of the Circuit Court was given upon the supposition that it was essential to show an ascertainment of the damages sustained, through the medium of a recovery in an action on the case against the plaintiff in the attachment.

This course of proceeding is considered to be unnecessary, as there is no sufficient reason why the recovery may not be had by suit on the bond in the first instance. Such a practice seems warranted by the statute, [Meek's Sup. 7, §1, 5,] and by decisions in analagous cases. [Ball v. Garden, 21 Wend. 270; Governor v. White, 4 S. and P. 441; Thompson v. Searcy, 6 Porter, 393.]

MOORE, contra, contended the judgment on the demurrer was proper, because no action can be maintained on the bond until the amount of damages is ascertained; until then there is no way in which the condition can be complied with. The right to maintain any action is dependent on a previous act to be done by the plaintiff.

It is doubtless true that the usual mode is to declare for the penalty of the bond, and thus put the defendant to his plea of performance, but there may be cases in which another plea than performance would be proper: as in the case of a bond conditioned to pay a sum of money after ten day's notice, from the obligee. Is it not apparent that as soon as this condition is shown on oyer, no cause of action appears until the notice is averred? If then, this illustration furnishes an exception to the general rule, it seems to involve the same principle as this

case, if it is necessary to ascertain the damages by a suit against the plaintiff in the attachment.

That this is necessary will appear by a careful collation of the several statutes prescribing the form and condition of bonds. [Aikin's Digest, 37, §3; ib. 38, §6; Meek's Sup. 7, §1, 5.]

GOLDTHWAITE, J.—1. The demurrer in this case was prematurely taken, because when the condition of the bond was set out on oyer, it showed a strict conformity with the statute, therefore the declaration for the penalty was proper, unless it was incumbent on the plaintiff in the first instance, to show some specific breach of the condition.

This is believed to be unnecessary, as the most approved authorities state the rule to be, that it is the privilege of the plaintiff, either to suggest breaches on the roll, or to declare for the penalty, and assign them in his replication to the plea of performance. [1 Wm's. Saund. 51.] Such also is the established practice in this Court. [Davis v. Dickson. 2 Stew. 370.]

Although the plea of performance is said to be the proper one to compel the plaintiff to assign the specific breaches on which he seeks a recovery, this must be considered merely as an illustration of the mode of pleading, as it will readily occur to any one that in those cases where the condition of the bond is to omit the doing of any act, the allegation of the omission will be equivalent to the assertion of a performance of the condition in other cases. So likewise if the forfeiture of the condition is to depend upon doing some act after notice from the obligee, as in the case of a condition to pay a sum of money upon notice, an averment in the plea that the notice was not given, will be equivalent to the usual averment of general performance in other cases.

The theory upon which the practice depends is, that the obligor, by the penal part of the bond, admits a debt presently due, and therefore it rests with him to show the continuance of the condition, upon which alone the penalty is deferred. And this applies equally to the cases of all bonds with negative or affirmative conditions.

This conclusion is sufficient to show that the jud͡g

the demurrer is erroneous, because, when it was made, there had been no attempt to set out any breach of the condition, and therefore there was nothing before the Court but the bond, and its condition, both of which, as before observed, are in accordance with the statute. But as the question with respect to the right of the plaintiff to maintain the action on the bond, without first ascertaining his damages by an action on the case against the plaintiff in the attachment, has been fully argued, and as it must necessarily arise when the case is again tried, we shall proceed' to express our opinion on that aspect of the case.

2. When the attachment law was revised in 1833, the whole was consolidated in one act, and in its third section the condition of the bond required to be given is prescribed. In the sixth section of the same a form is given of an attachment bond which sets out a condition materially different from that required by the previous section. It is the form of the bond set out which not only countenances the view of the defendants in this case, but actually provides as a part of the condition that the bond is only to become forfeit on the failure to pay such damages as shall be recovered against the plaintiff in the attachment in a suit to be brought after the determination of the attachment suit. Under ordinary circumstances there can be no doubt but the rules of construction would require the sixth section to be considered merely as a legislative exposition of the third ; but in point of fact, these two sections were compiled from different statutes, previously in force, and under which different bonds and other proceedings were required. [See Laws of Ala. 11, 18.]

It might have been proper, if this enactment had remained unchanged, to have pursued the ordinary rules of construction, but the act of 1835 declares that no person shall sue out an attachment without entering into the bond prescribed by the third section of the act of 1833 ; and the latter act also directs that the surety shall be liable to all the liabilities of the principal in the bond. The effect of the act of 1835 upon that of 1833, was considered by us, in the case of Alford v. Johnson, [9 Porter, 320,] as not repealing the sixth section which gives the form of the bond. The subsequent act of 1837, modifies

the existing laws with respect to attachments in several important particulars, and was considered by us in Lowe v. Derrick, [9 Porter, 415,] as repealing the 6th section of the act of 1833. This act also prevents the defendant in the attachment from disputing the grounds of suing out the attachment, and expressly gives him the right to sue the plaintiff for wrongfully or vexatiously using this process, and this before the attachment is determined. [Meek's Sup. 8, §5.]

It will be seen that the act of 1835 makes the liability of the surety of the bond the same as that of the principal. If this language was intended to be applied to the bond itself, or any remedy on that, it is without any sensible meaning, for we cannot perceive how there could exist a distinction between different obligors, bound by the same bond. We are inclined to belive that the intention of this act, though imperfectly expressed, was to make the surety liable on his bond to the same extent, not exceeding the penalty of the bond, as the principal was to an action on the case. However this may be, we are clear that the Legislature intended to relieve the statute book from the influence of the sixth section of the act of 1833, and consequently to destroy its effect in construing the condition of the bond required to be entered into by the third section.

In addition to this, the inconveniences which, in many cases must result from requiring a suit against the plaintiff in the attachment to ascertain the damages before allowing a suit on the bond, would, in effect, be a denial of justice. Attachments ir⸳ ⸳ be, and frequently are, sued out by non residents and ⸳ent persons, whom it would be difficult and frequently ⸳ipracticable to pursue to the places of their residence. It may be presumed too, that the inducements are greater to such persons to sue out this process than they are to those who are settled among us, and that it would be more frequently abused than if they were directly responsible to suits within the State. These considerations induce us to think that the Legislature intended to give the remedy on the bond in the first instance. Indeed, when all the objections against such a practice are fully examined, they are more technical than real, and it is just as easy to declare for a breach of the condition as it is in an action on the case for a wrongful prosecution. We forbear to express any opinion as to the precise manner in which

breaches might properly be assigned, as no quesiion of that nature is before us.

For the reasons we have before stated, the judgment of the Circuit Court must be reversed and remanded.