## Ex Parte BANKS.

[APPLICATION FOR MANDAMUS TO COMPEL CHANGE OF VENUE.]

1. *When permissive words in statute will be construed imperative.*—The word *may*, when used in a statute, will be construed mandatory and imperative for the purpose of sustaining and enforcing rights, but not for the purpose of creating a right or determining its character.—*Per* Walker, J., while Rice, C. J., *held*, that a permissive word should be construed peremptory, when used to clothe a public officer with power to do an act which ought to be done for the sake of justice, or which concerns the public interest or the rights of third persons.

2. *Code construed with reference to previous judicial decisions.*—In the framing of the statutes embodied in the Code, the legislature must be presumed to have had in view the then existing laws, and the construction placed upon them by the judicial decisions ; and where the provisions of the Code are substantially the same with the old law, the legislative sanction of the judicial construction which it had received may be inferred.—*Per* Walker, J.

3. *Change of venue in criminal case discretionary.*—The granting of an application for a change of venue in a criminal case (Code, §§ 3608, 3609) is discretionary with the court to which the application is made, and its refusal is not revisable in the appellate court by *mandamus* or otherwise. (Rice, C.J., *dissenting*.)

APPLICATION by Thomas G. Banks for a *mandamus* to the city court of Mobile, Hon. Alex. McKinstry presiding, to obtain a change of venue in a criminal case. The petition presented to this court, with the accompanying exhibit, shows that said Banks was indicted, at the November term of said city court, 1855, for the murder of Wm. H. Trone ; that he made an application, supported by affidavit, at the same term of the court, for a change of venue ; and that his application was refused. The affidavit submitted in support of that application states, that the affiant does not believe that he can have a fair and impartial trial in either Mobile or Baldwin county ; that said Trone was an old, influential, popular, and much esteemed citizen of Mobile, whose death created such an excitement that it was proposed by some persons to take summary vengeance on the defendant, who was a citizen of Lowndes county, Mississippi ; that three of the four newspapers published in Mobile, some of which are read by almost every citizen of Mobile and by many citizens of Baldwin

county, and which contribute in a large degree to give direction and tone to public opinion in those counties, have, without waiting for an investigation of the real facts of the case, published misstatements of the facts, charging affiant with the crime of murder, and comments which have excited the community against him; that affiant has been confined in jail, has had no opportunity to stay the public excitement, and has no hope of being able to do away with the excitement and prejudice raised against him; and he appends to his affidavit, as exhibits, extracts from the Mobile Register, Advertiser, and Evening News, purporting to state the facts in relation to the death of Trone, with editorial comments, and describing the public excitement against Banks. On this showing, the court refused the application for a change of venue; and the petitioner now seeks to revise its action by *mandamus*.

DANIEL CHANDLER, for the petitioner :

1. This court has jurisdiction of the case.—Ala. Const., Art. V, § 2.

2. There is no other court that can " superintend or control" the action of the city court in criminal proceedings. It has concurrent jurisdiction with the circuit court in such cases, and its proceedings can only be revised by this court.—Pamph. Acts of 1846, p. 30; *ib.* 1850, p. 36; The State v. Porter, 1 Ala. 688; *Ex parte* Pickett, 24 *ib.* 91.

3. *Mandamus* is the proper remedy. The object of the writ is, to compel the person to whom it is directed to do something, which he is supposed to be bound by his duty to do, which the prosecuting party has a right to have done, and for which he has no other specific remedy.—7 Port. 47; 1 Ala. 688; 3 *ib.* 746; 4 *ib.* 317; 5 Watts & Serg. 403; 2 Stephens' N. P. 2291-2.

4. By the constitution of the State (Art. I, § 10), every man, who is indicted for a criminal offence, is entitled to " a speedy public trial by an impartial jury"; and when the life of the unfortunate individual is involved in the issue, the court should be careful not to impair his rights, or to increase his jeopardy. The State has no election as to the county in which the case is to be tried. It is supposed to be ready and

prepared to try the case in the county in which the offence was committed, or in the adjoining county to which it may be transferred. Its citizens have no prejudice against its authority. Its officers are supposed to be honest. The public press cannot assail it, and has no inducement to impair its authority. Its object is justice, which can be administered by its officers as impartially in one county as in another. But the case is widely different with the defendant charged with the violation of the law. He may not be able to have "a fair and impartial trial" in the county in which the alleged offence was committed. It may have been committed under circumstances well calculated to excite public sympathy for the deceased, and popular indignation against the accused. The former may have been popular, influential, highly respected, and much beloved; and the latter a stranger, without friends, and, though innocent of the crime, may have been imprudent, and therefore liable to be misrepresented, censured and condemned. The public press may add fuel to the flame, and, by misrepresentations, exaggerated statements, and inflammatory appeals, prepare the public mind for injustice, violence, and vengeance. The legislature knew this, and made provision for such a case. It permits the defendant, when charged with an indictable offence, (and more certainly in a capital case,) after making affidavit setting forth the reasons why he cannot have a fair and impartial trial in the county in which the indictment was found, to remove his trial to another county.—Code, § 3608.

5. The affidavit, and the facts embraced in the bill of exceptions, comply with the requirements of the statute, and are sufficient to satisfy any reasonable man that a fair and impartial trial cannot be had in Mobile. It appears that three out of the four public presses in the city have commented freely on the case, have misstated the facts, have appealed to the prejudices and passions of the public, and have excited and exasperated the popular mind, to such an extent that, "wherever you go in the city, or whosoever you meet, sympathy is expressed for the deceased, and punishment is invoked on the accused." The deed is pronounced "murder"; it is alleged to have been committed "without provocation"; it is said that "nothing can palliate the atrocity of the act, and

even the ingenuity of counsel cannot make it out an accident."
One of the papers, after showing that confinement in the pen-
itentiary is too good for such a "criminal," states that even
his conviction and execution will not satisfy the public—that
summary vengeance, and the execution of the accused under
the law of the "regulators" and on the "first tree," are in-
voked.   These papers are extensively read and circulated in
the county; they represent the three great parties in the
State, and, in a great measure, form and mould public opin-
ion.   Are not these facts, all of which are set forth in the
affidavit, sufficient, specific, and satisfactory ?

6.   The judge below decided, contrary to right, to justice,
and to law, that the accused was not entitled to a change of
venue; and it is now said that his decision is not revisable.
Is this so ?   A right so important, so essential to the liberty
and life of the citizen, is not left to the discretion of the judge
who may try the cause.   If this were the case, the remedy
would be incomplete and ineffectual.   If left to the caprice,
prejudice, or discretion of the judge, the right would be
abused, and the fate of the accused would be decided, not on
the evidence, nor by the law, but by prejudice or passion, or
in conformity with the wishes of an excited populace.   Judges
are mere men; and we have read history to little profit, if
we do not know that, while they are dependent on the people
for their election, they will not be independent of their favor
and good opinion.   The legislature wisely provided, there-
fore, for a change of venue under particular circumstances;
and if the accused presents, under oath, such a state of facts as
will satisfy a reasonable man that an impartial trial cannot
be had in the county in which the indictment was found, *he
has the right to insist on a change of venue*.   If the primary
court refuse the application, this court will compel it to do
what is necessary for the safety of the citizen and the admin-
istration of justice.

7. It is said that the word "*may*," as used in section 3608
of the Code, gives the judge a discretionary power to grant
or refuse the application, and that his decision is final and
conclusive.   In the adoption of the Code, the legislature is
presumed to have known the construction placed by this court
on the word "may."   It means *must*, or *shall*, when used in a

statute, in all cases where the public interests are concerned, or the rights of third persons are involved, which require the performance of an act.—9 Port. 396; 17 Ala. 532; 5 Johns. Ch. 113. If the language of this section had been in con-- formity with these decisions, and the word " *shall*" had been used instead of " *may*," could any one have doubted its mean- ing, or questioned the duty of the court? The language would then have been imperative; and the rights of the accused, and the duty of the court, would have been plain. The language of the Code is permissive, but its construction by this court is imperative and peremptory; and wherever a statute, or a court in construing a statute, directs something to be done, the court will compel its performance.—2 Ste- phens' N.P. 2292; Rex v. Everet, Cases temp. Hardwicke, 261.

8. It is submitted that there is a difference between the language of the Code and that of the acts of 1819 and 1821, under which the cases of Brookshire and Ware (2 Ala. 303, and 10 *ib*. 814) were decided. In both of those acts, a dis- cretion is given to the judge, and he is to determine " the suf- ficiency of the cause." He has the " power" to refuse the application under one act, and it is " lawful" for him to refuse it under the other; and having exercised the power and the right, under either act, to the best of his ability, his decision cannot be revised. But, under the Code, the judge not only has the " power" to grant the application—it is not only " lawful" for him to do it, but he *must* and *shall* do it, if the application sets forth sufficient reasons why the defendant cannot have a fair and impartial trial. The right to a change of venue, in such a case, does not depend upon the discretion of the judge; and if he refuse the application, this court, in superintending and controlling his decision, must see that justice is done. This court can examine the facts, consider the reasons, and compel the inferior court to do justice to the citizen, and faithfully to administer the law. The defend- ant's rights depend, not on the judgment or opinion of the court below, but upon the law, upon the facts disclosed in the application, upon the reasons assigned for a change of venue; and if they are sufficient, this court has the power, and it is its duty, to compel that to be done which the citizen has a right under the the constitution and laws to insist should be done.

9. Public policy requires that applications for a change of venue, when honestly made and supported by facts, should be favored and encouraged. The State cannot be injured, and the slight inconvenience to which she may be subjected cannot compare with the importance of administering justice, and of giving every citizen a fair and impartial trial. She is interested in defending the character and in preserving the lives of her citizens. She should not desire the conviction of an innocent man, or the vindictive prosecution of a guilty one. The law presumes every one innocent, until he is proved guilty; and the State should give him a fair and impartial trial. This cannot be done, if the case is prejudged, and public opinion is prejudiced against the defendant. No one can read this application, and the facts therein satisfactorily established, without coming to the conclusion that the trial in this case should be removed from Mobile. A fair and impartial trial is the glory of our law, and it should be the aim of our judges. If this great and important end is defeated by the decision of one judge, let it be promptly and effectually secured by the decision of the controlling and superintending tribunal of the State.

M. A. BALDWIN, Attorney General, *contra:*

1. The power to change the venue in criminal cases is discretionary with the circuit court.—Brookshire v. The State, 2 Ala. 305; Ware v. The State, 10 *ib.* 815; Gasaway v. Smith, 3 Humph. 157; Findley v. The State, 5 Blackf. 576; Spence v. The State, 8 *ib.* 283; Bank of Cleveland v. Ward, 11 Ohio, 128; Roscoe's Criminal Evidence, 260.

2. But, if the power be not discretionary, the petitioner is not entitled to a change of venue in this case, because the facts are not sufficient. The motion is based principally on newspaper comments in the case. Neither of the papers published that Banks was guilty of murder, but that he had "involved himself in the crime of murder." Indeed, one of the papers states a fact, which, if true, would go far to acquit the prisoner—to-wit, that he "was crazy with drink." Nor is the affidavit sufficiently specific. It states that the newspapers have "misstated the facts", but does not say wherein. This is too general : the misstated facts should have been

disclosed in the affidavit, to enable the court to decide whether they were material, and whether a fair and impartial trial could not be had in Mobile. Mere belief on the part of the prisoner, that he cannot have a fair trial, is not sufficient. The affidavit does not disclose a single person prejudiced against the prisoner in consequence of the newspaper comments.—The People v. Bodine, 7 Hill's (N. Y.) R. 149; The State v. Burriss, 4 Harr. (Del.) R. 582; Moses v. The State, 11 Humph. 238; Bowman v. Ely, 2 Wend. 250; Boswell v. Flockheart, 8 Leigh, 364.

3. Admitting that the power to change the venue is not discretionary with the circuit judge, and that a *mandamus* will lie from this court, in a proper case, to compel the change; yet, before this court will grant the writ, the case must be a clear one upon the facts, and the party unequivocally entitled to it.—1 Chitty's Criminal Law, 201; The People v. Vermilyea, 7 Cowen, 138; The State v. Williams, 2 McCord, 382; Rex v. Harris, 3 Burr. 1333; The People v. Bodine, *supra;* Roscoe's Criminal Evidence, 260.

WALKER, J.—The decision of the question before this court depends upon the construction of the statute in reference to changes of venue in criminal cases. If the statute confers upon accused persons a legal right, not determinable alone by the judgment of the court to which the application is made, this court must, in the performance of the constitutional duty of exercising "a general superintendence and control of inferior jurisdictions", revise the action of the court below in reference to that right. If the statute confers a right to a change of venue, only when the judgment of the court hearing the application is convinced that a fair and impartial trial cannot be had in the county in which the cause is pending, the decision of the court is not revisable, by *mandamus* or otherwise.

Sections 3608 and 3609 of the Code are in the following words: "The trial of any person charged with an indictable offence may be removed to another county, on the application of the defendant, duly supported by affidavit."—"The application must set forth specifically the reasons why the defendant cannot have a fair and impartial trial in the county in

which the indictment was found, and must be made as early as practicable before the trial, or may be made after conviction, on a new trial granted."

The word "*may*" in a statute, although a word of permission, is sometimes construed as if it were the synonym of "*must*," or "*shall*". The instances in which it is to be so construed are said, in a decision of this court, to be where the public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power shall be exercised.—*Ex parte* Simonton, 9 Porter, 395. The language of this court in another case, determining the effect of permissive words, is as follows : "Such words, when used in a statute, are regarded as peremptory, when the public, or an individual, has a right *de jure* that the powers conferred should be exercised.—Gould v. Hayes, 19 Ala. 462.

The effect of the principle thus enunciated, in kindred language, in the two cases cited, is, that "*may*" must be, by construction, converted into an imperative word, for the purpose of sustaining and enforcing rights, and not for the purpose of creating them, or determining their character. A mandatory meaning may be imputed to the word "*may*" in the statute quoted, if the statute has conferred a right ; but it involves an unauthorized extension of the principle, to resort to that construction for the purpose of showing that the statute designed to confer a right, or for the purpose of determining the character of the right conferred. There can be no doubt, that where a right is conferred, or something for the public benefit, or in promotion of public justice, is prescribed, and authority is conferred by permissive words to carry out the statutory purpose, these words are obligatory, and the exercise of the authority may be demanded as a matter of right, in an appropriate case.—Dwarris on Statutes, 53. The permissive word is to receive an obligatory construction, *because* the statute confers a right, or is for the public benefit, or in promotion of justice. That construction results from the fact that a right is conferred, and is not the controlling rule in ascertaining the purpose of the legislature as to the conferring of a right. The word "*may*", in the statute under consideration, cannot be construed as "*must*" for the purpose of showing that an unconditional right to a change of venue, ir-

respective of the judgment of the court hearing the application, is conferred. In order to determine whether a right is bestowed, and how that right is to be ascertained, we must resort to the usual rules for the interpretation of statutes ; and afterwards we must give the permissive words such a construction as will secure the enforcement of the rights conferred.

Does, then, the statute confer an unqualified legal right to a change of venue, when the proper showing is made, or merely a right to claim it from the enlightened judgment of the court to which the application is made ? In the former alternative, "may", as found in the statute, will be construed as mandatory. In the latter alternative, we must give it its accustomed signification.

The act of 1819 (Clay's Digest, 343, § 166) is in the following words : " Judges of the circuit courts, within their respective circuits, at or before the first trial term of any suit, civil or criminal, *shall have the power* to change the venue thereof, *on good and sufficient cause*, set forth and duly supported by oath or affirmation." The act of 1821 (Clay's Digest, 480, § 26) is in the following language : " *It shall be lawful* for the judges of the circuit courts, respectively, to grant to any person charged with a criminal offence a change of venue, *for sufficient cause shown*, at any time, either at the first trial term, or, if the case should be continued, or a new trial had after conviction, at a subsequent term." There is no matter of difference between these two statutes and the sections of the Code quoted, which could affect the question of the revising power of this court over the action of the circuit court under them. The former of the old statutes uses the words " *shall have power*," &c. The latter uses the words, " *it shall be lawful*." The language of the Code is, " the trial of any person charged with an indictable offence *may* be removed," &c. No material distinction can be drawn, as to the import of the three expressions, " *shall have power*", " *shall be lawful for*", and " *may*". They are alike permissive words, which, in their strict meaning, import an authority conferred, and not an obligation imposed. In Gould v. Hayes, *supra*, the words " shall have full power" were under construction ; and in *Ex parte* Simonton, the word " may" was construed. The expressions in the

two decisions were alike treated as permissive words, susceptible of an imperative construction when a right is conferred, and the public or third persons have a right *de jure* that the power should be exercised.

The two old statutes and the Code are different in this: one of the former says, that the change of venue shall be granted for "*sufficient cause*", and the other for "*good and sufficient cause*"; while the Code prescribes the inability of the defendant to have a fair and impartial trial in the county as the cause for a change of venue. The Code states the cause for which the venue may be changed; the old law leaves it undefined. The old law leaves undetermined the cause, and the sufficiency of the proof; the Code determines the cause, but leaves the sufficiency of the proof that the cause exists to be determined by the judge. The difference in this respect affords a just argument to prove that the margin left for the judgment of the court below is narrowed by the Code, but not that it is taken away. When the cause for a change of venue is prescribed, there remains still a large margin for the exercise of the judgment and discretion of the court. Even before the adoption of the Code, the practice in the circuit courts had fixed the improbability that a fair and impartial trial could be had in the county as the cause for a change of venue; so that there is a correspondence between the practical effect of the old law, and the language of the new. It is fairly inferrible, therefore, that the departure in this respect from the phraseology of the old law was designed to effect a conformity to its practical operation, and not to change it.

The language of a subsequent section of the Code is, that the trial "must be removed to the nearest county free from exception." If the decision of the court upon the question of the change of venue is revisable, so must its decision upon the other question of the county to which the cause is removed be revisable. The Code prescribes no *criteria*, by which it is to be determined whether a county is "free from exception"; and a decision in favor of the revising power of the court in this case would lead to the conclusion, that the decision of the court as to whether a county is free from exception is revisable. The uncertainty and indefiniteness of the Code in

this respect is certainly not less than that which character-
ized the old law. There is as clear an absence of rule for
the government of the court in deciding whether a county is
free from exception, as in deciding whether a cause should be
continued.

From what has been said, the conclusion is attained, that
there is no difference between the law found in Clay's Digest
and in the Code, which effects the question in this case.

In the case of The State v. Brookshire, 2 Ala. 303, and of
The State v. Ware, 10th Ala. 814, the old statutes underwent
an examination in this court. In the former case, the ques-
tion was before the court by writ of error; in the latter, it
was referred as novel and difficult. In both cases, the re-
vising power of this court was invoked after conviction. It
is decided in both cases, that the action of the circuit court,
on an application for change of venue, is not revisable. The
decision of the former case is placed exclusively on that
ground; in the latter case, the additional reason is assigned
that a *mandamus* would be the only remedy. An examina-
tion has not detected any impeachment in any subsequent
case of the authority of those two cases. They must, there-
fore, be deemed to have been the subsisting recognized judi-
cial expositions of the law of this State at the time of the
adoption of the Code. In the framing of the statutes found
in the Code, the legislature must be presumed to have had in
view the existing law, and the construction placed upon it by
this court. By carrying into the Code a law substantially
the same with that which previously existed, the legislature
must be intended to have had reference to the construction
placed on the old law, and the legislative sanction of it may
therefore be inferred.—Duramus v. Harrison & Whitman, 26
Ala. This conclusion is corroborated by the fact, patent in
the Code itself, that the existing judicial expositions of the
law were had in view in its construction, and that many of its
provisions are accommodated to them.

There are other arguments persuasive to the conclusion that
the question of change of venue is one not revisable. The
act contemplates that the court may act, in changing the
venue, upon no other evidence than the *ex parte* affidavit of
the accused. The question whether that affidavit may be

controverted is not involved in the argument, and is therefore pretermitted. Not only the rights of the accused, but the interests of the State, and the convenience of witnesses, are concerned. When the claim to change of venue is made to rest upon such evidence,—when there is no oral examination, or cross-examination of witnesses, there is no possibility of ascertaining the facts with certainty upon which the court is to act. Besides, the question whether a fair and impartial trial can be had in a particular county is one which, from its very nature, cannot be subjected to any certain and definite tests, and as to which scarcely a proximate certainty can be attained. It is conceivable that, in the decision of such a question, determinable by such evidence, the judgment of the court hearing the application would alone be consulted. It is not probable that the legislature would have made a question, thus susceptible of no definite and reliable determination, the subject of revision in this court.

If, when a change of venue has been refused, the court should refuse to continue the case, until a decision could be had in this court, the injured party would be unable to avail himself of his remedy by *mandamus*. The allowance of a continuance is admitted to be discretionary, and therefore it is impracticable to place the question beyond the control of judicial discretion. If the argument that the statute confers a right entitled to protection in this court, is traced through its consequences, it will be found that an effectual immunity from the errors of the court below could only be afforded by giving the injured party a right, after conviction, to assign the refusal of his application as error. This would be the necessary result of the argument made.

I regard the change of venue as one of those matters which must be left to the control of the judgment and discretion of the presiding judge. Human judgment, and human reason, are fallible; and, no doubt, many hard cases must arise, and injustice may occasionally be done. But the same thing is true of applications for continuances, to file additional pleas, to introduce overlooked testimony after the argument of the cause has commenced, and for new trials. These are all matters which quite as much involve the interests of the parties, as questions of change of venue; and yet, in our system of

jurisprudence, they are determinable alone by the court before which the cause is pending.

The decisions of the courts of our sister States, in reference to the change of venue, are generally based upon statutes. For that reason, they are not referred to as authorities in this opinion ; but none of them are in conflict with the conclusion attained.

The affidavit, with the accompanying papers, before the city court of Mobile in this case, in my judgment authorizes the conclusion that there is in the county of Mobile and Baldwin a state of public feeling and sentiment such that there is a strong probability that the accused cannot have a fair and impartial trial in either of those counties. The refusal of the *mandamus*, therefore, is not intended to indicate an approval of the action of the court below.

The application must be dismissed, at the cost of the petitioner.

STONE, J.—I am not able to detect any material distinction between the language employed in the Code (§§ 3608–9–10) and that found in the previous acts of 1819 and 1821. The act of 1819 (Digest, p. 343, § 166) uses the words, " good and sufficient cause, set forth and duly supported by oath or affirmation." The act of 1821 (*Ib*. p. 480, § 26) was intended to enlarge the *time* within which the application may be made and entertained ; and, in my opinion, does not restrict or enlarge the *grounds* on which the court below acts. In the act last stated, the words are, "for sufficient cause shown", &c. The Code declares, that " the application must set forth specifically the reasons why", &c. " Good and sufficient cause", "sufficient cause", and "reasons why", are, to my comprehension, almost synonyms; when found in the statutes above quoted. Each of them supposes a *ground*, a *cause*, a *reason*, why the action of the court is invoked ; but neither expression conveys the remotest idea of what the cause or reason shall consist of. No fact, or set of facts, are expressed in either of said statutes or the Code, as constituting, when they exist, that cause or reason. Each expression is a conclusion to be drawn from a fact or set of facts, and neither is in itself a fact.

Neither is there anything in the argument predicated on the language of section 3609 of the Code, which requires the affidavit to set forth the reasons why "the defendant cannot have a fair and impartial trial in the county in which the indictment was found." This section expresses the object to be attained—viz., a fair and impartial trial; but whether that can be had in the county in which the indictment was found, is, at most, a conclusion, and never can be a demonstrable fact. Like all other conclusions, it can only be drawn from facts set forth. The legislature having uniformly refrained from prescribing what fact or facts shall be sufficient, it follows that they must be of such a character as reasonably to convince the presiding judge that a fair and impartial trial cannot be had in the county in which the indictment was found.

As a test of the correctness of this verbal criticism, let it be supposed that an affidavit for change of venue employs the very language of section 3609 of the Code, or of either of the statutes of 1819 and 1821, and it will be, at once, pronounced insufficient. It would contain no fact or evidence upon which the judge could act, and from which he would be authorized to draw the desired conclusion. To enable him to do so, under either the old or the new law, facts must be sworn to; and if they amount to "good and sufficient cause", "sufficient cause", or "reasons why" the venue should be changed, it is the duty of the judge to grant the order.

The words in the Code, "The application must set forth specifically", &c., do not establish a new rule. The only correct practice which could prevail under the statutes of 1819 and 1821, would require a statement of the facts. In judicial proceedings, all necessary facts should be stated clearly, distinctly. No particular potency attaches to the word specifically. It is but the antithesis of the word generally, and forbids a too general statement of the grounds for change of venue.

In my opinion, the cases of Brookshire v. The State, 2 Ala. 303, and Ware v. The State, 10 ib. 814, correctly ascertain the law on this question. This, like many other duties which devolve on the presiding judge during the progress of a suit

4

or prosecution, must be left to his sound and enlightened discretion. It may be abused. So may many other discretionary powers, which are admitted not to be revisable. If this be an evil, the legislature can remedy it.

I do not wish to be understood as sanctioning the action of the court below in this case. All I decide is, that a change of venue cannot be coerced by *mandamus*.

RICE, C. J.—A defendant in an indictment, whether he be really guilty or innocent, has the right to a fair and impartial trial. The preservation of that right is a matter of public concern, and is demanded by justice and the public welfare. A refusal to render a defendant in an indictment the means provided by law for obtaining a fair and impartial trial, may be as injurious to him as the direct refusal of such a trial would be. Such refusal is a denial of justice, and ought not to be without remedy.

At the adoption of the Code, it was known that the removal of the trial from the county in which the indictment was found had been, and would again be, in some cases, essential to the preservation of the right of the defendant to a fair and impartial trial; and that under the acts of 1819 and 1821, in relation to changes of venue, it was *a mere matter of discretion* with the judge to whom the application was made, whether he would grant or refuse a change of venue.—Ware v. The State, 10 Ala. 814. If the legislature had intended that, under the Code, the granting or refusal of a change of venue should *continue to be a mere matter of discretion*, I think the provisions of the acts of 1819 and 1821, either in words or substance, would merely have been re-enacted in the Code. But, instead of merely re-enacting in the Code the words or substance of those acts, the legislature went greatly beyond that, and did what never before had been done, to-wit, *defined with particularity the cause* for which a change of venue should be allowed, and *prescribed the mode of proceeding* to obtain a change of venue.

In these respects, the provisions of the Code differ essentially from the acts of 1819 and 1821, and from the statutes of those States whose decisions are relied on by a majority of the court in the present case.

The sections of the Code, relating to this subject, are as follow :

"§ 3608.  The trial of any person charged with an indictable offence may be removed to another county, on the application of the defendant, duly supported by affidavit.

"§ 3609.  The application must set forth specifically the reasons *why the defendant cannot have a fair and impartial trial in the county in which the indictment was found,* and must be made as early as practicable before the trial, or may be made after conviction, on a new trial granted.

"§ 3610.  The trial can be removed but once, and *must be removed to the nearest county free from exception.*"

The acts of 1819 and 1821 did not specify, nor undertake to hint at or define, any cause for which a change of venue might be allowed.  Their provisions were so loose, general, and indefinite in all respects, as to show that it was the intention of the legislature, in adopting them, that the matter of a change of venue should rest merely in the discretion of the judges of the primary courts, and that there should be no revision of the exercise of that discretion.  Those acts did not contain or prescribe any definite rules for the regulation or control of the exercise of that discretion, and therefore a revision would have been impracticable; for the revising court could not well have decided that the rules or regulations for the exercise of the discretion had been violated, when no such rules or regulations had been established by law.

But, under the Code, the case is entirely different.  In it, the cause for which a change of venue is to be allowed is clearly defined—to-wit, that the defendant cannot have a fair and impartial trial in the county in which the indictment was found.  The mode of proceeding to obtain a change of venue is prescribed; and when a change of venue is granted, it is distinctly declared, that the trial "*must be removed to* the nearest county free from exception."

It seems to me incredible, that, in a Code of laws prepared with deliberation, and adopted by the legislature for a people who love liberty and justice, three such carefully drawn sections, so strikingly different from the former statutes on the same subject, could have been inserted *for no other purpose*

than *merely to permit* a judge of a primary court to grant a change of venue only when he thought fit to grant it!

It also seems to me incredible, that the real meaning of these sections of the Code is, that in deciding whether he will allow a change of venue or not, the judge of the primary court acts as a sovereign, who can do no wrong, and is not responsible to any tribunal on earth; but that yet, if, in the plenitude of his power, he should graciously allow a change of venue, then and there his discretion ends, and he "*must*" send the case to the nearest county free from exception!

Yet, if the opinion of the majority of the court is correct, both the foregoing singular propositions are good law. It is evident that my brethren would not have attained the conclusion which they have attained, if the word "*must*" were inserted in lieu of "*may*" in section 3608. They seem to concede, that "*must*" is a peremptory word where it occurs; but they insist that "*may*", as used in section 3608, is permissive merely: and the argument on their side is, that whilst the word "*may*", where it occurs in a statute in relation to *an existing right*, is peremptory, yet that word *never creates a right*.

If that argument is right, all the authorities are wrong; for they agree that the word "*may*" in a statute can *create a right*,—that, whilst it is permissive merely, where the public or third persons have no interest in having it considered as imperative, yet it is peremptory, where it is used in a statute to clothe a public officer with power to do an act, which ought to be done for the sake of justice, or which concerns the public interest, or the rights of third persons. Conferring the power on the officer to do such act, *creates a right* in those for whose benefit the power was conferred; and they may insist on the execution of the power, as a duty, "though the phraseology of the statute be permissive merely, and not peremptory." See the cases collected in Smith's Commentaries on Statutes, §§ 595 to 604; *Ex parte* Simonton, 9 Porter's R. 395; Gould v. Hayes, 19 Ala. 462.

If the legislature designed, as I think it did, by the provisions of the Code above quoted, to confer on a defendant in an indictment *the right* to a change of venue, where he applies for it in due time and in the prescribed mode, and establishes

in legal contemplation the fact that he cannot have a fair and impartial trial in the county where the indictment was found, it was fit to use the word "*may*" in section 3608. It would have been improper to use the word "*must*", in lieu of "*may*", in that section; because, if that had been done, the section, interpreted literally, would have made it the duty of the court to remove the trial to another county, on the mere "*application* of the defendant, duly supported by affidavit", without regard to *the sufficiency* of the reasons why he could not have a fair trial in the county where the indictment was found. It was not the design of the Code to make it the duty of the judge of the primary court to grant a change of venue, merely because there was an "*application*" made for it, duly supported by affidavit. But the design was, to make it his duty to grant it only when the application was made in due time, and in the prescribed mode, and specifically set forth facts and circumstances which, in legal contemplation, established the proposition that a fair and impartial trial cannot be had by the defendant in the county where the indictment was found. The design was not to deprive the judge of the exercise of discretion and judgment, nor to arm him with an arbitrary or capricious discretion; but to invest him with a discretion, regulated, as nearly as may be, by general rules, and to be exercised, in granting or refusing such applications, in accordance with justice and the laws of the land.

Whilst I do not deny the exercise of discretion to the judge, I maintain that his discretion must be exercised consistently with the rules of law; and that, if it is not so exercised, we are bound to revise it, and to apply the proper remedy.—Durousseau v. The United States, 6 Cranch, 312 to 319. In bills for specific performance of a contract, the chancellor has a discretion; yet his action on such bills is revisable. In applications for bail, the judge has a discretion; yet his action in that matter is revisable. And I lay it down generally, that "whenever a suitor is *entitled to a right*, which is withheld from him by the decision of a court," it cannot, in any just and accurate sense, be called "a mere matter of discretion", but is revisable.—Wormeley v. The Commonwealth, 10 Grattan's R. 658; Etheridge v. Hall, 7 Porter's R. 47;

*Ex parte* McCrary, 22 Ala. 65; Vaughn v. Robinson, 22 *ib*. 519; Gordon v. Longest, 16 Peters, 97; Montague's case, 10 Grattan, 767; McCauley v. The State, 26 Ala. 135; Ned v. The State, 7 Porter's R. 187; Pulliam v. Owen, 25 Ala. 492.

It has been asserted, with seeming confidence, that no authority could be found for the position I maintain. I might, with equal confidence, assert that no decision can be found opposed to the views I have advanced, *upon any such statute provisions as are contained in our Code*. But it is a great mistake to suppose that my view is unsustained by authority. The cases and principles above mentioned clearly sustain my position. The case of Wormeley v. The Commonwealth, 10 Grattan's R. 658, sustains it; and the supreme court of the United States, in Gordon v. Longest, 16 Peters, 97, made a decision unanimously, which not only sustains the views above announced by me, but goes further than I go. See, also, the opinion of C. J. Marshall in Durrosseau v. The United States, 6 Cranch, 312 to 319.

According to the construction put upon the Code by my brethren, as I understand it, there is no such thing in Alabama as *a right to a change of venue!* If a defendant in an indictment applies, in due time and in the prescribed mode, for a change of venue, and by his application and proof conclusively shows that he cannot have a fair and impartial trial in the county in which the indictment was found, and that a change of venue is essential to procure for him a trial by "an impartial-jury", my brethren hold that he has no right to a change of venue—that the judge of the court where the indictment was found may keep him, and force him to be tried in the county in which it is clear he cannot have a trial by "an impartial jury."

I cannot assent to the reasoning or conclusion of my brethren. Nor am I in any degree the more inclined to adopt their conclusion, from the alleged fact that already the judges have powers merely discretionary, by which they may do much injury to the rights of the citizen. If this be so, it is no reason why they should be clothed with any more such power. In theory, our government is one of *laws*, and not of *men;* and it ought to be made so in practice.