# McKELLAR *vs.* COUCH.

[ACTION ON THE CASE FOR WRONGFUL AND MALICIOUS ATTACHMENT.]

1. *When action lies for suing out attachment.*—Under the provisions of the Code,
an action on the case does not lie to recover damages for the mere wrong-
ful suing out of an attachment without malice.

APPEAL from the Circuit Court of Dallas.
Tried before the Hon. WM. M. BROOKS.

THIS action was brought by Wilson H. Couch, against
J. D. W. McKellar, to recover damages for the defend-
ant's act in "wrongfully, maliciously and vexatiously suing
out an attachment against plaintiff." The defendant

pleaded the general issue, "with leave to give in evidence any matter which could be specially pleaded;" and the cause was tried on issue joined on that plea. All the evidence adduced on the trial, and the several rulings of the court to which exceptions were reserved by the defendant, are set out in the bill of exceptions, but require no special notice. The only point here decided is presented by the first charge given by the court below, which was as follows : "The court charged the jury, that if the attachment was wrongfully sued out, then, although the defendant acted in good faith and without malice, the plaintiff was entitled to recover." The defendant excepted to this charge, and he here assigns it as error, together with all the other rulings of the court to which he reserved exceptions.

E. W. PETTUS, with whom was JNO. T. MORGAN, for the appellant.—1. At common law, no action would lie for suing out any legal process, without averring and proving malice and a want of probable cause.—3. Bla. Com. 100, and note ; Lindsay v. Larned, 17 Mass. 191; McLaren, Ragan & Co. v. Bradford, 26 Ala. 616 ; McCullough v. Grishobber, 4 Watts & Serg. 201; Stone v. Swift, 4 Pick. 389; Garrard v. Willett, 4 J. J. Mar. 630 ; White v. Dingley, 4 Mass. 433 ; Turner v. Walker, 3 Gill & John. 377 ; Morris v. Corson, 7 Cowen, 281; Ives v. Bartholomew, 9 Conn. 309 ; Marshall v. Betner, 17 Ala. 832 ; Tatum v. Morris, 19 Ala. 302.

2. In Wilson v. Outlaw, Minor, 367, it was held, that malice was not necessary to sustain an action on the case for wrongfully suing out an attachment. But that case was decided by a divided court; and that it is contrary to the uniform and unbroken current of decisions, is shown by the authorities above cited. Nor can it be sustained on principle. There is, and can be, no reason why the courts should favor defendants in attachment, more than defendants in any and every other form of action. In detinue, all of a man's slaves may be taken, and, if he is unable to give bond, he may be deprived of their use pending the suit, may lose his credit, and be ruined before

the termination of the suit; yet, unless he can show malice on the part of the plaintiff, he is compelled to be satisfied with the return of the slaves and their hire. In an action for one hundred dollars, if the plaintiff will make oath to certain facts, and give security for the costs, the defendant may be arrested, and unjustly imprisoned; and yet, if there is no malice, his suit for damages would be answered by the phrase, *damnum absque injuria.* In a civil suit, or in a criminal prosecution, the defendant may be charged with an infamous offense, may be blasted in reputation, and ruined in fortune; and yet, when he comes into court for redress, he is told that, unless he can show malice in the plaintiff or prosecutor, he is without remedy. How, then, can the court give Couch a right of action in this case, where, in the language of the charge, McKellar has "acted in good faith, and without malice, believing, and having probable cause to believe, that Couch was about to remove out of the State?" Moreover, if Wilson v. Outlaw was correctly decided under the laws then existing, it cannot now be considered as authority; for, while some stress is there laid on the strict construction then given to the attachment law, it is now expressly provided that "the attachment law must be liberally construed to advance the manifest intent of the law."—Code, § 2562.

3. By the act of 1837, which was passed after the decision in Wilson v. Outlaw was made, it was provided, "that whenever an original attachment shall have been wrongfully or vexatiously sued out, the defendant therein may, at any time, commence suit against the plaintiff suing out the same, and recover any damages which he may have sustained, or to which he may be entitled on account thereof, whether the suit commenced by attachment be ended or not."—Clay's Digest, 61, § 32. This statute clearly gave an action on the case, whenever an attachment was "wrongfully or vexatiously sued out;" and under this statute were decided the cases of Kirskey v. Jones 7 Ala. 622, and Seay v. Greenwood, 21 Ala. 491.

4. But the act of 1837 has been repealed by section 2564 of the Code, which is in these words: "The defendant must not deny or put in issue the cause for which the

attachment issued, but may, at any time within three years of the suing out of the attachment, before or after the suit is determined, commence suit on the attachment bond, and may recover such damages as he has actually sustained, if the attachment was wrongfully sued out." The first clause of this section is almost identical with the first clause of that section of the act of 1837, above quoted; and each statute provides, that the defendant may bring his action before the termination of the attachment suit. But note the differences between the two statutes : By the act of 1837, suit may be commenced "at any time;" under the Code, it may be commenced "at any time within three years." The act of 1837 gave a suit "against the plaintiff;" the Code gives a suit, not against the plaintiff, but "on the attachment bond," which, in many cases, is not executed by the plaintiff. The act of 1837 authorized the defendant to recover "any damages which he may have sustained, or to which he may be entitled on account thereof;" the Code authorizes him to recover "such damages as he has actually sustained." True, section 2565 gives vindictive damages for malice; but that section was only designed to apply the common-law measure of damages to an action on the bond, where the plaintiff in attachment had acted maliciously as well as wrongfully. If any effect is to be given to these changes in the law, they must be held to limit the remedy of the defendant in attachment, in the absence of malice, to an action on the bond.

5. To say that the common-law rule, requiring a party injured by a suit to show malice before he can recover damages, does not apply to suits by attachment, because such suits are the mere creature of the statute, is to asume the very point in controversy. The rule of the common law applies, not only to common-law suits, but to all suits not excepted by statute from its influence. The same objection was made in Lindsay v. Larned, 17 Mass. 189, which was an action on the case for causing an attachment to be levied on the plaintiff's property. See, also, Stone v. Swift, 4 Pick. 389 ; McCullough v. Grishobber, 4 Watts & Serg. 201 ; Williams v. Hunter, 3 Hawks, 545 ; Marshall v. Betner, 17 Ala. 802.

6. If the statute does not give an action on the case for the wrongful suing out of an attachment, the inconvenience and injury to which defendants in attachment will sometimes be subjected, either where there is no bond, or where the penalty of the bond is not sufficient to cover the damages sustained, may afford an argument to the legislature in favor of a change in the law, but cannot enter into the consideration of the courts in construing the existing law. The courts have no power to provide for a *casus omissus* in the statute law.

W. M. BYRD, and GEO. W. GAYLE, *contra.*—1. It was settled by several decisions of this court, under the law which existed prior to the adoption of the Code, that an action on the case could be maintained for the mere wrongful suing out of an attachment.—Wilson v. Outlaw, Minor, 367; Kirksey v. Jones, 7 Ala. 625; McCullough v. Walton, 11 Ala. 495; Donnell v. Jones, 13 Ala. 492; Forrest v. Collier, 20 Ala. 175; Seay v. Greenwood, 21 Ala. 493.

2. The attachment law found in the Code is substantially the same as the law which previously existed, and must, therefore, receive the same judicial construction which had been placed on the former law.—Duramus v. Harrison & Whitman, 26 Ala. 326; *Ex parte* Banks, 28 Ala. 38; Sartor v. Br. Bank, 29 Ala. 353; Stallworth v. Stallworth, 29 Ala. 76. The only material difference between the old law and the new, is that the latter prescribes three years as a statute of limitation, while the former prescribed no limitation.

3. There is nothing in the language of the Code, or deducible from the spirit of any of its provisions, to justify the inference that the codifiers or law-makers intended to confine the party injured by the suing out of an attachment to an action on the bond: on the contrary, there are several reasons why such could not have been their intention. That the word *may*, as used in section 2564, is not used in its imperative sense, as the synonym of *must*, see *Ex parte* Simonton, 9 Porter, 390. If section 2564 be held applicable only to an action on the bond, section 2565 must be limited in like manner. If an action on the

McKellar v. Couch.

bond be the only remedy allowed the defendant in attachment, he is, of course, without remedy where no bond is given; and in many cases where bond is given, the amount of the penalty being only double the amount of the plaintiff's debt, his remedy is wholly inadequate to the injury actually sustained.

R. W. WALKER, J.—The principal question in this case is, whether an action on the case will lie to recover the damages sustained by the mere wrongful suing out of an attachment.

By the ancient common law, no person could prosecute a civil action, without having in the first stage of it two or more persons as pledges of prosecution; and if he failed in his suit, an amerciament, or fine to the king, was imposed on him. But this guard against unjust suits at length lost all its vigor, and evaporated into mere form; and in its stead, by various statutes, costs to the defendant were substituted. These costs were intended, and are considered, as a satisfaction to the defendant for the inconvenience of being held to defend a groundless suit; and except where statutes have otherwise provided, they are, in cases where no malice is shown, the only indemnity which the law secures to the defendant. The general principle is thus broadly stated by Lord Coke: "And therefore, where it is said that a man shall not be punished for suing of writs in the king's courts, be it of right or wrong, it is regularly true."—Coke Litt. 161, (a). This language must be held to refer to suits which are simply unfounded, not malicious. For the authorities all agree in holding, that if the suit be malicious, as well as unfounded, an action on the case will lie to recover the damages occasioned by it; while, on the other hand, the undoubted principle of the common law is, that the mere wrongful resort to legal process affords no ground of action.—Co. Litt. 161, (b), note; Lindsay v. Larned, 17 Mass. 190; McLaren, Ragan & Co. v. Bradford, 26 Ala. 618; Marshall v. Betner, 17 Ala. 87; McCullough v. Grishobber, 4 Watts & Serg. 121.

It follows that, where an attachment has been sued out

wrongfully, but without malice, the party injured cannot maintain an action on the case to recover the damages, unless there is some statutory provision giving him that right. To determine whether we have any statute which, properly construed, confers such a right, it becomes necessary to examine to some extent the history of our legislation upon the subject, and the course of decisions in reference to it.

The remedy by attachment seeems to have been given as early as 1799, and was fully established and regulated by an act of the territorial legislature passed in 1807. By that act, the plaintiff in the attachment was required to give a bond, the condition of which was as follows: "Now, if the said plaintiff shall prosecute his suit with effect, or, in case he fail therein, shall well and truly pay and satisfy to the said defendant all such costs and damages as shall be awarded and recovered against the said plaintiff, his heirs, &c., in any suit or suits which may be hereafter brought, for wrongfully suing out the attachment, then the above obligation to be void."—Laws of Ala. 11, 13, 15.

In Wilson v. Outlaw, Minor's R. 367, the precise question now before us was presented; and the court there held, that an action on the case would lie against the plaintiff in the attachment, if the attachment was sued out wrongfully, though without malice. In the opinion of the court in that case, the condition of the bond, above quoted, as required by the act of 1807, was especially referred to as a reason (though not the only one) for the decision. If the court intended to decide that, independent of some statute authorizing the action, case would lie for the mere wrongful resort to the process of attachment, we should have no hesitation in saying that the decision could not be regarded as correct. But, if the decision is to be considered as resting upon the terms of the attachment bond then required, we are not prepared to say that it was wrong, though we would not be understood as affirming it to be right.

The proposition, that the legislature had, by the form of the bond prescribed by the act of 1807, sufficiently

indicated that the defendant was authorized to bring an action on the case against the plaintiff for wrongfully suing out the attachment, seems to be supported by the decision of the supreme court of North Carolina, in Davis v. Gully, 2 Dev. & Batt. 360. In that case it was determined, that a bond, with condition to be void upon the payment of such damages as might be recovered of the principal obligor, for wrongfully bringing a suit in equity against the obligee, is a guaranty that the principal shall be able to satisfy any judgment obtained against him in an action on the case for wrongfully filing the bill.

It seems to be intimated in some of the cases, that no action would lie upon such a bond as that prescribed by the act of 1807, until the damages had been ascertained in a distinct suit against the plaintiff.—See Herndon v. Forney, 4 Ala. 246; Alford v. Johnson, 9 Porter, 320; Garrett v. Logan, 19 Ala. 347.

The language of the condition seems to indicate, that damages for wrongfully suing out the attachment might be recovered of the principal, in a suit against him, not founded upon the bond; and inasmuch as the liability of the sureties is made to depend upon the preliminary suit against the principal, the implication is, perhaps, not reasonable, that the statute, by prescribing such a condition, must be considered as having conferred on the injured party the right to bring an action on the case against the plaintiff.

If the decision of Wilson v. Outlaw can be supported at all, it is upon this ground alone. The only basis on which it can rest being the terms of the bond as prescribed by the act of 1807, it follows that, when that act was in respect of the condition of the bond repealed, the decision at once ceased to be authority.

In 1833, the attachment law was revised. This act, in its sixth section, prescribed precisely the same form of bond as that required by the act of 1807.—Aikin's Dig. 38, § 6. In 1837, another statute was passed, by which it was enacted, that the condition of the bond should be to prosecute the attachment to effect, and pay the defendant all such damages as he may sustain by the wrongful

or vexatious suing out of the attachment.—Acts of 1837, p. 62. In Lowe v. Derrick, 9 Porter, 415, it was held, that this act was a repeal of so much of the 6th section of the act of 1833, as prescribed a different condition for the bond, and a re-enactment of the 3d section of that act. The 6th section of the act of 1833 was, as already stated, but a re-enactment of that part of the act of 1807, which constituted the only basis on which the decision in Wilson v. Outlaw could be supported. The basis of that decision being thus destroyed, we cannot regard it as an authority entitled to any weight in this case. The material distinction between the bond required by the act of 1807, and that prescribed by the act of 1837, is clearly pointed out in Herndon v. Forney, 4 Ala. 246; see, also, Alford v. Johnson, 9 Porter, 320; Garrett v. Logan, 19 Ala. 347; Boyd & Walker v. Martin, 10 Ala. 700, (702.)

After the act of 1837 was passed, the right of the defendant to bring an action on the case against the plaintiff, for wrongfully suing out an attachment, still continued to exist, but it was derived from a new and altogether different source. After the passage of that act, the right to bring such an action depended, not upon the condition of the bond required to be given, but upon the *proviso* to the 5th section of that act, which was in these words : " *Provided*, however, that whenever any original attachment shall have been wrongfully or vexatiously sued out, the defendant therein may, at any time, commence suit against the plaintiff suing out the same, and recover any damages which he may have sustained, or to which he may be entitled on account thereof, whether the suit commenced by attachment be ended or not."—Clay's Dig. 61, § 32.

In Donnell v. Jones, 13 Ala. 501, which was an action on the case for wrongfully and maliciously suing out an attachment, the court said : " On the part of the plaintiff in error it is insisted, that the action is misconceived ; that the plaintiff below should have brought his action upon the bond given by Donnell, in order to procure the issuance of the attachment, as required by statute.—Clay's Dig. 61, § 34. We do not agree with the counsel in this

McKellar v. Couch.

position.    The act of 1837 provides, that 'when any orig-
inal attachment shall have been wrongfully or vexatiously
sued out, the defendant may, at any time, commence suit
against the plaintiff suing out the same, and recover any
damages which he may have sustained, or to which he
may be entitled on account thereof, whether the suit com-
menced by attachment be ended or not."

In Seay v. Greenwood, 21 Ala. 494, which was an action
on the case for wrongfully suing out an attachment, the
court, after setting out the 5th section of the act of 1837,
proceeds : " The legislature evidently intended, by the
enactment of this statute, to make the wrongful suing out
of the process referred to, of itself, a sufficient cause of
action, and, in such case, to authorize the defendant to
recover for the actual damages sustained; and if the
attachment is sued out maliciously as well as wrongfully,
to recover vindictive damages, without, in either case,
waiting for the determination of the suit against him.
Such was the construction given to this section of the
statute referred to, in Kirksey v. Jones, 7 Ala. 622; and
we are satisfied that the decision was correct."    To this it
may be added, that an action on the case is a proper one
for enforcing a right to damages given generally by stat-
ute, especially where no other adequate remedy is specif-
ically prescribed by statute.—Autauga County v. Davis,
32 Ala. 703.

There can be no doubt, that after the repeal of the act
of 1807, and the enactment of the statute of 1837, the
real and only basis for the decision, that an action on the
case would lie for the mere wrongful suing out of an
attachment, was the 5th section of the last-named act.
Indeed, it would be impossible to sustain the cases which
assert that such an action would lie, as correct rulings of the
law, except by reference to that act.    Take away that pro-
vision in the statute of 1837, and where in the legislation
of the State can be found any act, which, upon the most
liberal construction, could be held to change, as against
plaintiffs in attachment, the well established principle of
the common law, that an action on the case will not lie to

23

recover damages for the mere wrongful resort to legal process?

It will be observed, that the act of 1837 did not deprive the defendant in attachment of any rights of action allowed him by the common law. These were, the right to sue on the bond to recover damages for either wrong-fully or vexatiously suing out the attachment, and the right to sue in case for the malicious resort to the process. Neither of these rights of action could be enforced at the common law, until the termination of the attachment suit.—Tatum v. Morris, 19 Ala. 302; Hill v. Rushing, 4 Ala. 213; Herndon v. Forney, ib. 243; Spivey v. McGe-hee, 21 Ala. 417; Garrett v. Logan, 19 Ala. 346. These common law rights of the defendant were by the statute left intact, but new rights were superadded, namely, the right to bring either of the actions authorized by the common-law before the termination of the attachment suit, and the right to bring an action on the case against the plaintiff for the mere wrongful suing out of the attach-ment.—Donnell v. Jones, 13 Ala. 501–2.

Thus stood the law until the Code was adopted. Hav-ing shown that, before the Code, the only authority for an action on the case, for the mere wrongful resort to the process of attachment, was given by the 5th section of the act of 1837, let us now consider whether any provision, similar in effect to that section, is to be found in the Code.

A safe general rule for construing the Code is stated in *Ex parte* Banks, 28 Ala. 38. "In the framing of the statutes found in the Code, the legislature must be pre-sumed to have had in view the existing law, and the con-struction placed upon it by this court. By carrying into the Code a law *substantially* the same with that which pre-viously existed, the legislature must be intended to have had reference to the construction placed on the old law, and the legislative sanction of it may, therefore, be inferred."—See, also, Duramus v. Harrison, 26 Ala. 326. It would seem to be a corollary from this proposition, that if the legislature, in codifying the law upon a subject em-braced by an old statute, while substantially re-enacting

some of the provisions of the former statute, employs in reference to the special matter embraced by another one of its provisions words materially variant and expressive of a different purpose, the fair conclusion is, that it was not the intention to re-enact, but on the contrary to change in this respect, the former law.

The only sections of the Code which relate to the particular matter covered by the 5th section of the act of 1837, are in the following words:

"§ 2564. The defendant must not deny or put in issue the cause for which the attachment issued, but may, at any time within three years of the suing out of the attachment, before or after the suit is determined, commence suit on the attachment bond, and may recover such damages as he has actually sustained, if the attachment was wrongfully sued out.

"§ 2565. If sued out maliciously, as well as wrongfully, the jury may, in addition, give vindictive damages."

The marked difference between the language of the two sections above quoted, and that employed in the 5th section of the act of 1837, will at once strike the attention. The latter statute gives a general right to 'recover *any* damages which the defendant may have sustained, or to which he may be entitled' on account of the wrongful or vexatious suing out of the attachment, without designating any particular form of action as the remedy to be pursued. On the other hand, nothing can be more obvious than that both of the foregoing sections of the Code relate to one and the same suit, and that is expressly declared to be a suit on the bond. In reference to that suit, they give to the defendant the right to commence it before the termination of the attachment suit, prescribe a statute of limitations which is to govern it, and fix the measure of damages to be recovered. This is the clear meaning of the words; and when words are plain, there is no room for construction. It would be nothing short of judicial legislation, for us to deduce from this language the authority to bring an action on the case for the mere wrongful suing out of an attachment. By a rule of the common law, that right was denied to the defendant; and

a statute is never construed as abolishing a rule of the common law, unless by express words or necessary implication. It is said that courts are bound to uphold the rule of the common law, if that and the statute to be construed may subsist together.—Berley v. Rampacher, 5 Duer, 183 ; Sedg. on Stat. &. Const. Law, 127–9, and authorities cited ; Williams v. Potter, 2 Barb. 316 ; Comm. v. Herrick, 6 Cushing, 465.

The common-law right of the defendant to bring an action on the case for maliciously proceeding by attachment is not touched by these sections of the Code, unless it *may be* that the provision, which prohibits the defendant from putting in issue the cause for which the attachment issued, destroys the reason of the common-law rule which postponed the right of action until the termination of the suit, and that the rule ceases with the reason of it. On this question we intimate no opinion. In like manner, the right of the defendant to an action on the bond, for the wrongful or vexatious suing out of the attachment, belongs to him at common law. The regulation of *this* right is the purpose of these sections. They give to the defendant the privilege denied him by the common law, of bringing his action before the attachment suit is terminated ; and they limit the period within which it must be brought.

The form of the bond required by the Code is altogether different from that prescribed by the act of 1807, and furnishes no such implied authority for an action on the case against the plaintiff, as, we have seen, might be drawn from the peculiar condition of the bond required by this latter act.

It may be objected to this construction of the Code, that inasmuch as, in an action on the bond, the recovery is necessarily limited by the penalty, the result will be, that in many instances the remedy of the party injured by an attachment wrongfully issued, may be inadequate. This is true, and it would be an argument entitled to weight, if the words of the statute were obscure, or of doubtful import: but, where the language is unambigu-

ous, it is a consideration which is properly addressed, not to those who construe, but to those who make the law.

It is also said, that if section 2564 has reference alone to actions on the bond, then the last clause of that section, and the whole of section 2565, are simply declaratory of what the law would have been if there had been no statute on the subject. It may well be doubted whether this is true in reference to the provision made in section 2565. But, conceding it to be so, statutes which do not change, but only affirm the principles of the common law, are by means rare; and it would not be difficult to find in the Code many illustrations of this fact. Such would be the character of section 2565, if we adopt the construction urged by the counsel for the appellee; for, if that section applies to actions on the case, it simply asserts what would have been the rule independent of any statute.

Our conclusion is, that in the present state of our laws, an action on the case, or a suit in the nature of an action on the case, does not lie for the suing out of an attachment wrongfully, but without malice.

The judgment is reversed, and the cause remanded.